JOHN HOLMES CALLEN, PLAINTIFF-APPELLANT, v. LENORE MERRILL CALLEN GILL, DEFENDANT-RE-SPONDENT.

Argued May 14, 1951—Decided June 11, 1951.

*Mr. William R. Blair, Jr.,* argued the cause for appellant. *Mr. Robert H. Maida* on the brief. (*Messrs. Parsons, Labrecque, Canzona & Combs,* attorneys.)

*Mr. Crawford Jamieson* argued the cause for respondent. *Mr. Harrison T. Barrow* on the brief. (*Messrs. Jamieson & Walsh,* attorneys.)

The opinion of the court was delivered by

CASE, J. Plaintiff, John Holmes Callen, and defendant, Lenore Merrill Callen Gill, formerly husband and wife, were divorced by the decree of a Nevada court on April 24, 1942. Both parties subsequently remarried. There were three children of the marriage between plaintiff and defendant, of whom one, Daniel Dixon Callen, is the subject of this contest for custody. The parties made an agreement on April 7, 1942, which provided that "the care and custody of the aforementioned three children of the marriage shall be in the party of the first part (the husband) with right of visitation in the party of the second part." The Nevada decree approved, confirmed and adopted the agreement of which that provision was a part, and the parties were decreed to abide thereby and to perform the obligations thereof. The decree, with the agreement which it incorporated, was observed by the parties until on or about January 27, 1950, when Daniel, then 12 years of age, went, as was the practice, to spend the weekend with his mother at Bay Head, and from that time forward the boy did not return to the father's household except on a single occasion, June 19, 1950, in celebration of his brother's birthday.

Plaintiff filed this complaint charging his former wife with exercising undue pressure and restraint upon the lad and praying for an order directing the return of the child, and awarding his custody to the plaintiff, and for such other

order or relief as the court might direct pertaining to the best interest and welfare of the said child. The matter came on for hearing. At the conclusion of the hearing the court determined that the truth of the allegations of the complaint had not been sustained and that the complaint should be dismissed. It is not clear just what allegations of the complaint failed in truthfulness. The status of the Nevada decree and of the agreement made in connection therewith and incorporated therein was not disputed, nor was it disputed that the custody of the children, including that of Daniel, had been in accordance therewith until the departure of Daniel from the plaintiff's household beginning January 27, 1950. The appeal was to the Appellate Division of the Superior Court and was brought here on our own motion.

Appellant presents five points, of which the first is that it is error to permit an attorney of record to testify to the merits of a Chancery matter. The point arises out of the incident that Mr. Harrison T. Barrow, defendant's attorney of record, was permitted by the court to testify at the hearing on matters going to the merits of the case over objection of counsel for the plaintiff. The practice whereby an attorney for a party takes the witness stand and testifies in behalf of his client on the merits of the case was severely condemned by the former Court of Chancery. *Garrett v. Garrett,* 86 *N. J. Eq.* 293 (*Ch.* 1916); *Doremus v. Doremus,* 88 *N. J. Eq.* 256 (*Ch.* 1917); *Gershonowitz v. Neider,* 95 *N. J. Eq.* 580 (*Ch.* 1924); *In re Judges,* 101 *N. J. Eq.* 9 (*Ch.* 1927); *Caruso v. Caruso,* 102 *N. J. Eq.* 393 (*Ch.* 1928); *Etz v. Weinmann,* 106 *N. J. Eq.* 209 (*Ch.* 1930); *Seminara v. Grisman,* 137 *N. J. Eq.* 307 (*Ch.* 1945). It was recognized, however, that there are instances where counsel cannot avoid testifying on behalf of his client, as where facts are so peculiarly within his knowledge that his evidence becomes a matter of necessity in order that justice may be done.

The Canons of Professional Ethics, adopted by the American Bar Association and made by our *Rule* 1:7–6 to apply to

the conduct of members of the bar of this State, provides in section 19 as follows:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in Court in behalf of his client."

Taken in the abstract, the practice is under emphatic condemnation. Yet, notwithstanding the severity with which the Chancery decisions denounced the practice, and the suggestion in them that the testimony of a lawyer so offending would be rejected, we find no instance where such testimony was actually rejected. In *White v. State Board of Tax Appeals*, 123 *N. J. L.* 350 (*Sup. Ct.* 1939), the attorney for a taxpayer was excluded by the State Board of Tax Appeals as a witness. The opinion by Mr. Justice Parker on review by *certiorari* had this to say:

"The conduct of Mr. Craven in offering himself as a witness is criticised by the respondents, and not unreasonably. In 70 *C. J.* 175, it is said: 'Except with respect to confidential communications, an attorney may testify as to matters affecting his client. As respects an attorney connected with the case on trial, the practice of counsel testifying is of doubtful propriety and he should ordinarily withdraw before becoming a witness, and if counsel testifies, generally it is unbecoming for him to examine witnesses or address the jury, although there is no impropriety in his testifying to mere formal matters, and there are exceptional cases in which it may be proper and necessary for counsel to testify to matters affecting the merits of the case. * * *' As we have already intimated, this testimony that was excluded was not such as required an expert witness, and apart from the statute, any one with personal knowledge of the facts could have testified to them. In the Court of Chancery testimony by an attorney or solicitor has been condemned a number of times. (Citing Chancery cases. ) But whatever may be the ethical propriety or otherwise on this point, it cannot well be said that the testimony was legally incompetent on that account."

and held that the testimony was erroneously excluded.

The testimony of Mr. Barrow did go to the merits of the case and perhaps it could have been substituted from other

sources. Yet, it is to be said that, although the witness was the attorney of record for the defendant and apparently was present at the trial, he did not participate actively in the proceedings and did not, so far as we discover, examine witnesses or address the court. The giving of testimony by an attorney in the cause is a matter of professional ethics rather than of evidence ruling or trial procedure. The practice, except in formal matters or when essential to the ends of justice, is disapproved; but the court's ruling was not judicial error. *Pull v. Nagle,* 9 *Misc.* 987 (*Sup. Ct.* 1931).

Appellant's second point is that the testimony by the defendant of statements made by Mr. Barrow and the testimony by Mr. Barrow of conversations with the child were inadmissible. The testimony given by the defendant about what Mr. Barrow had said to her was slight and immaterial. Mr. Barrow's testimony was concerning his observation of the child and the reaction of the child to his surroundings. Such few remarks attributed to the child as were given in the testimony did not go to contested facts but to the child's emotional reactions. The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts; and instances of it in the present case were few and unimportant. We find no reversible error under the point.

It is next said on behalf of the appellant that the court below erred in refusing to make known to counsel the boy's statements given to the judge in private. This presents a delicate and, in view of the record, a confused

question. The authority of the judge to conduct a private examination of a child in order to discover its wishes as to custody is well established (*Francisco v. Francisco,* 73 *N. J. Eq.* 313 (*Ch.* 1907), *von Bernuth v. von Bernuth,* 76 *N. J. Eq.* 200 (*Ch.* 1909), *Schultze v. Schultze,* 73 *N. J. Eq.* 14 (*Ch.* 1907)), and the ages beneath which the child shall not be examined at all (*Hesselman v. Haas,* 71 *N. J. Eq.* 689 (*Ch.* 1906)) and above which the examination shall be public are largely within the discretion of the court. But the object of a private examination is to ascertain the predilection of the child, and that predilection, when ascertained, should be openly stated. It is a factor which will be considered by the trial court and an appellate court as well. *Richards v. Collins,* 45 *N. J. Eq.* 283 (*E. & A.* 1889). Manifestly, however, it would not be just to elicit from the child a statement of the facts upon which that predilection rests, as that the father was cruel or that the mother did not supply nourishing food, and for the court to accept and act upon such a statement as proof of facts bearing upon the determination, without making disclosure to the parties and upon the record; such a disclosure as is illustrated by *In re Elmer,* 125 *N. J. Eq.* 148 (*E. & A.* 1939). The preference of a young child has a place, although not a conclusive place (*Giffin v. Gascoigne,* 60 *N. J. Eq.* 256, 259 (*Ch.* 1900)), in the determination, and the preference ascertained by the judge in private, if that be the procedure, should be stated openly as the end result of the examination. But no assertion of fact by the child should be permitted by the judge to influence his decision unless he makes the same known. Parties must have an opportunity to be heard upon the facts, *cf. Test v. Test,* 131 *N. J. Eq.* 197, 201 (*E. & A.* 1941), else due process is not had, and a reviewing court must be put in possession of the proofs which lead to the decision, else it may do an injustice.

In the instant case the record shows agreement by plaintiff's attorney in the right of the judge "to consult with the child and keep it to himself"; but it also shows that the

attorney thereafter made vigorous request upon the court to place on record the information learned from the child so that the plaintiff, if so advised, might rebut, and for other reasons which the court would not permit him even to state. The ruling was that "The cases are very clear where infants are involved it is the privilege of the court to consult with the child and what happened was confidential and nobody else's business." That, in our opinion, was an overstatement of the rule. The court, in its conclusions, maintained the attitude that it was the court's privilege, in reaching its conclusions, to have a private talk with the child; and that was a sound position. The court also held that it was the court's privilege to maintain the child's confidence as to the conversation; and that may or may not be correct, depending, as we have shown, upon circumstances. The court did state some incidents of the interview; but what parts were withheld, and whether they bore upon the decision, we do not know. A 12-year-old child has not attained that ripened discretion which enables him to determine conclusively what his own welfare demands (*cf. English v. English,* 32 *N. J. Eq.* 738, 748 (*E. & A.* 1880)); nor has he the impartial acumen necessary to make so accurate an appraisal of the facts that a court may accept that appraisal, without disclosure, as a factor in the decision. We are unable from the record to say that the court did not overrate the child's wishes or that it was not influenced by undisclosed factual incidents. It was a mistake to deny counsel an opportunity to state his reasons for asking a court ruling, and it was inaccurate to declare that counsel had no right to present the incident on an appeal.

Appellant's point four is that the decision of the court was contrary to the weight of the evidence and the applicable rule of law. The fault of the decision was that it deliberately refrained from settling the child's custody. The agreement between the parties was that custody should be with the father. That also was the decree of the Nevada court; although, in the absence of proof as to whether the

children were within the jurisdiction of the Nevada court so that a decree of that court might effectively determine custody, no argument thereon being made before us, we do not pass upon the legality of the decree. In any event the controlling factor is the present and future welfare of the child. The dismissal of the complaint in our Superior Court left the custody of the child entirely undetermined. The boy should not have been left to roam at will, even between the home of his mother, now the wife of and residing with another man, and the home of his father, now married to and residing with another woman. It appears from the court records that on January 18, 1951, about three months after the judgment of dismissal and while the same was under appeal, the wife filed what purported to be an original complaint in this cause alleging that the child was residing with her at Bay Head and praying solely that the court direct the plaintiff to pay to her, the defendant, suitable sums of money periodically for the education, care and support of the child. The court had denied an oral application for support money made contemporaneously with the decision of the main case. Upon the filing of that pleading an order to show cause issued, and three months later, April 20, 1951, a temporary consent order was made, likewise entitled in the present cause, directing the plaintiff to pay the defendant the sum of $100.00 a month retroactive to February 20, 1951, and awarding the temporary custody of the child to the defendant.

It is primarily the failure of the judgment now before us to determine custody which leads us to remand the instant cause in the manner hereinafter stated.

Finally, it is said that counsel for the defendant is not entitled to a counsel fee. The argument goes not to the amount of the allowance but to the proposition that no counsel fee whatever should be allowed. *Rule* 3:54–7 establishes the right of the court below to award counsel fees in a matrimonial action. By *Rule* 3:82(*b*) a dispute over the custody of a child is defined to be a matrimonial action.

It was, therefore, discretionary for the court below to make an allowance. *Cf. Seitz v. Seitz,* 6 *N. J. Super.* 65 (*App. Div.* 1949).

For reasons hereinbefore stated we conclude that the judgment under review should be reversed, that the record should be remanded to the Superior Court, Chancery Division, that the proceedings there be opened for the incorporation of the pleading by the defendant, that the pleadings be so moulded as to permit the court to award custody to either of the parents, as he shall determine, and that further testimony be taken—before the court, not before a master—if the parties, or either of them, so request or the court requires. Costs will abide the event.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.