59 N.J. Super. 597 (1960)
158 A.2d 421
LEONA TROTTA, PLAINTIFF-RESPONDENT,
v.
MAURICE TROTTA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1960.
Decided February 26, 1960.
*598 Before Judges GOLDMANN, CONFORD, and FREUND.
Mr. Morris N. Hartman argued the cause for appellant.
Mr. Leslie H. Cohen argued the cause for respondent (Mr. Harry Kay, attorney; Mr. Cohen, on the brief).
GOLDMANN, S.J.A.D.
Pursuant to an order granting leave to appeal, defendant initially sought review of three interlocutory orders entered by the Chancery Division in his wife's separate maintenance action. The scope of the appeal has since been considerably reduced, as hereinafter noted.
The parties were married in 1931. Plaintiff claims that despite her every attempt to preserve the marriage she was obliged to separate herself from defendant because of his extreme cruelty, and finally had to leave the marital home in Verona with her son Richard on June 17, 1958. Efforts to effect a reconciliation having failed, she instituted an action for separate maintenance on August 1, 1958. She also applied for support and maintenance for herself and her son pendente lite, with counsel fees and suit monies. *599 Before the application could come on for argument, the parties entered into an agreement on October 3, 1958 which, among other things, fixed the amount of support payments, gave plaintiff custody of the boy, and provided that defendant "have the right to visit his son frequently and the son Richard shall be encouraged to spend as much time as possible with his father."
In January 1959 plaintiff applied for an order requiring defendant to pay her the amount set out in the agreement, as well as counsel fees and suit monies. The result was an order, dated March 24, 1959, directing defendant to pay plaintiff $100 a month for her support and maintenance and $200 a month for Richard, beginning January 30, 1959, together with counsel fees pendente lite, costs and suit monies. This was, on plaintiff's application, modified by an order entered June 18, 1959 which, among other things, directed that defendant also pay 50% of the taxes and mortgage payments on the marital home to which plaintiff and her son had returned some months before.
In the meantime defendant applied for and was granted leave to file a counterclaim seeking (1) custody of his son Richard; (2) "the right to have the said child attended to by a child psychologist"; and (3) an investigation by the Probation Department into the character and fitness of the parties, their economic condition, and defendant's financial ability to pay support and maintenance.
Immediately following entry of the modifying order of June 18, defendant applied for an order relieving him from paying plaintiff further support pendente lite, and also for an order permitting him "to commence a program of reconciliation between himself and his son with the aid of a child psychologist." Extensive affidavits were filed. On June 26, 1959 the Chancery Division judge denied both applications. In lieu thereof, and adopting plaintiff's suggestion, he ordered Richard to appear on July 1, 1959 for an interview, at which time he would determine if it were necessary to seek the aid of a court-appointed psychologist.
*600 The results of that interview are set out in the findings and conclusions embodied in an opinion filed by the judge after learning of the present appeal.
"On July 1, 1959, this court interviewed Richard Trotta, the son of the parties hereto. This interview was by consent of both parties. The court ascertained that Richard Trotta was born on February 9, 1943; is living with his mother, the plaintiff, at 27 Birdseye Glen, Verona, New Jersey, and has finished the 10th year in Paramus High School of this State.
After the interview, the court reported that the predilection of the child of the marriage was that he did not want to visit with his father under the existing circumstances and that he would object to any psychological examination. Richard stated that he would obey any order of this court.
It should be noted that plaintiff's attorney, who has since withdrawn from the case, stated that the plaintiff in no wise sought to bar the court from the benefit of whatever professional psychological advice it deemed necessary. Plaintiff doubted whether the inquiry by the Essex County Probation Department was necessary.
Although the boy explained his reasons for these conclusions the court is of the opinion that in accordance with the case of Callen v. Gill, 7 N.J. 312 (1951), the details of the conference should not be disclosed.
In view of the fact that the Essex County Probation Department is making an investigation of this entire problem, and partly by reason of the predilection of the child of the marriage approximately 16 1/2 years of age, the court arrived at the conclusions above stated."
On July 15, 1959 defendant made two applications in the Chancery Division. In the first he again sought to be relieved from further payments of maintenance and support pendente lite, and by the second requested that the Essex County Probation Department make an impartial investigation of the character and fitness of the parties in connection with his request for custody. The court denied the former and granted the latter. It also entered an order, dated July 15, 1959, adjudging defendant in contempt for violating the support and maintenance order. The order was temporarily stayed on condition that he make certain payments.
On July 16, 1959 defendant filed his notice of appeal to this court from the July 15, 1959 contempt order, the order denying his motion to revise the orders for support *601 and maintenance pendente lite, and the order denying his application for the appointment of a child psychologist. These orders being interlocutory, he obtained an order on August 21, 1959 granting him leave to appeal, conditioned on his making certain payments within a time fixed.
Defendant initially filed a brief pro se in which he argued four points: (1) error by the trial court in failing to provide him with visitation rights; (2) error in failing to appoint a child psychologist "to determine the cause of the estrangement between defendant and his child and to assist in a reconciliation and to order the plaintiff to cooperate to effect such a reconciliation"; (3) error in ordering defendant to pay certain arrearages and support pendente lite, half of the taxes and mortgage interest on the marital dwelling, and counsel fees, and denying defendant's motion to revise the support and maintenance order; and (4) error in requiring him to write certain arbitration agencies with which he was connected to obtain data on his earnings. Defendant soon after obtained present counsel, who gave notice that the third and fourth points were abandoned, the appeal being limited to the question of visitation rights and the appointment of a child psychologist to effect a reconciliation.
The visitation issue was in effect abandoned at the oral argument. It could not have been maintained, and this for several reasons. First, defendant never made a formal motion explicitly requesting visitation rights, so that the court was never called upon to enter nor did it ever enter, an order granting or denying such rights. Indeed, the March 24, 1959 support order, which made no mention of visitation rights, was approved as to form by defendant's then attorney.
Second, when plaintiff sought modification of the March 24 order, defendant filed a lengthy affidavit in which he stated:
"I have not hereinabove requested that in lieu of a pendente lite order for custody of our son in my favor, that I be granted visitation rights for the reason that by a constant campaign of vilification, *602 abuse, innuendo and distorted facts over a period of 15 years, which might be designated under the well-accepted theory of brain washing, she has poisoned my son to the extent that he would most likely be expected to agree with all her conclusions, without basing such conclusions on any facts. It is therefore obvious that a visitation order would be an empty gesture, since as above appears, my son has been trained, without cause, to hate me. * * *"
Finally, plaintiff in her affidavits and through counsel has represented that there never has been any issue of visitation rights between her and defendant; he could make whatever arrangements he wanted with Richard. Her position, stated at oral argument, is that she has no objection to an order for reasonable visitation, and defendant is free to apply therefor to the trial court at any time.
Admittedly, the real issue here is whether the trial court erred in refusing to appoint a child psychologist. The argument made is that the interview between the trial judge and Richard did little more than touch the surface of the situation; only a thorough study of the family background and the existing tensions and frictions could explain the present unhappy relation between father and son and develop a program which would ameliorate it. It is not enough, says defense counsel, for the court to conclude after a brief interview that Richard is not disposed to visit his father "under the existing circumstances" and "would object to any psychological examination." Where a father is willing to pay for the services of a child psychologist (so runs the argument), the trial judge should be eager to take advantage of the help which the social sciences of today can give in resolving questions of visitation and custody; to refuse such expert help does not reflect an enlightened exercise of judicial discretion.
We readily accept the suggestion that the aid of a psychologist or psychiatrist or family caseworker may be of inestimable help in resolving the always difficult problem of determining visitation rights and awarding custody. There may be situations where the offer of such help should be accepted, even before final hearing, because any continuation *603 of estrangement between parent and child can only worsen with the passage of time. However, we do not agree with defendant that the circumstances here presented such a case.
The situation existing in the Trotta family, and particularly between defendant and his son, was fairly revealed in the many affidavits filed in the cause. This is not to say that they are a complete and satisfactory substitute for testimony that will be adduced at the full hearing, but they did serve the purpose of providing the trial judge with sufficient insight into the familial situation to warrant his denial of defendant's application, particularly so where he had directed and was awaiting a report by the Probation Department on the results of its investigation. Defendant's affidavits would indicate that it is the mother who is responsible for the son's present attitude toward his father  the specific charge being that she has conducted a campaign of vilification, innuendo and distortion for a number of years (variously stated), and is guilty of "brain washing" and poisoning Richard's mind. But elsewhere in his affidavits, and in the affidavits filed by plaintiff and the maid who served the family for more than six years before the separation, there are strong indications that defendant himself is at fault, and that he has failed both as a husband and a father.
To force the aid of a child psychologist upon an unwilling son is, by every principle of good casework, to deal with the situation in a completely unsatisfactory and unrealistic manner. In circumstances like the present, what is called for is the help of a psychologist or a psychiatrist, or both, to consult and advise with all three persons involved  defendant, his son and his wife  in the hope of restoring the father-son relationship, if at all possible. Completely preferable would be the willingness of all concerned to seek such help in the hope of obtaining an understanding of what has brought about the present situation, and determining to act so as to resolve it. Although, where *604 that is not possible, a matrimonial judge would be justified in adopting the less desirable course of ordering the parties to seek that help in aid of his determination of visitation and custody, we cannot say that his discretion may not be exercised against such a course.
We find no error, in the present circumstances, in the refusal of the trial judge to order a program of reconciliation between defendant and his son with the aid of a child psychologist. There is nothing in the record to show that Richard himself needs psychological treatment, as such. It would appear that he is an intelligent 17-year-old boy, emotionally well balanced and effectively motivated, who has achieved a good record in school. He has lived through years of unhappy family scenes. All we have is defendant's unsupported statement, made in the course of the proceedings in the Chancery Division, that he had been advised by a child psychologist, a psychiatrist and an endocrinologist that his son needs the attention of a child psychologist. The least defendant could have done was to provide the trial judge with the affidavits of these men, or other persuasive proof of that purport.
The whole question of the appointment of a child psychologist emerged in the setting of pendente lite arrangements. The trial judge, in the exercise of a sound discretion, and after interviewing Richard and ordering a Probation Department inquiry at defendant's suggestion, correctly refused to order a program of reconciliation at that stage of the proceedings. We are informed that the Probation Department report has now been filed with the court. The matter is ready to go to final hearing. After the trial judge has had the benefit of the testimony of both parties and Richard he can, if deemed necessary or advisable, direct that a casework program be initiated looking toward a closer relation between father and son.
Appeal dismissed.