98 N.J. Super. 323 (1967)
237 A.2d 298
JAMES C. CLARK, PLAINTIFF-APPELLANT,
v.
RONALD H. CORLISS AND BETTIE CORLISS, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1967.
Decided December 27, 1967.
*324 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. John T. Keefe for appellant.
Mr. Sidney H. Weintraub for respondents.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff James Clark sued for a reconveyance of title to a dwelling house which he had deeded to defendant Ronald Corliss, his stepgrandson. The Chancery Division entered judgment in favor of defendants. Plaintiff appeals.
The record reveals the following chronology of events leading to the litigation. Clark and his wife Ada had raised Ronald since the separation of his parents when the boy was two years of age. The Clarks had no children of their marriage. They purchased the premises in question in 1951 and resided there continuously until the death of Ada on September 25, 1965. On the same day Ronald, who had been in the Marine Corps for 3 1/2 years, returned home on leave "awaiting discharge."
Clark at that time was 75 years of age. He was physically handicapped due to the loss of his right leg, which had been amputated shortly after Ronald had entered military service. Within two weeks after Ronald's return, Clark transferred his *325 property to Ronald. The deed was dated October 8, 1965 and recited a "nominal consideration only." There was evidence that the house was in disrepair and was subject to a mortgage of approximately $2,000; the taxes were estimated at $400 a year. Clark had no other assets and his only source of income was a Social Security payment of $90.10 per month. Clark and Ronald continued to live in the house, and the latter paid the balance due on the mortgage, assumed the carrying charges, and spent over $2,000 for repairs and improvements to the property.
On June 11, 1966 Ronald married defendant Bettie Corliss. Problems then developed, primarily between Bettie and Clark, which ultimately resulted in Clark leaving the homestead. He was admitted to the Edison Nursing Home on October 4, 1966. Shortly thereafter, October 15, 1966, Ronald transferred the property to himself and his wife as tenants by the entirety.
The minimum cost to maintain Clark at the nursing home was $250 a month which was paid by the Middlesex County Welfare Board, less Clark's Social Security payments after a deduction of $7 a month for his personal needs. It is plain that plaintiff's suit was instituted at the insistence of the welfare board.
The trial court found that Clark had sufficient understanding as to what he was doing, the conveyance in question was voluntary, and the transaction was not an improvident act on his part.
Notwithstanding defendants' proofs in support of those findings, we cannot say, in light of the present record, that the conclusion reached by the trial court should be affirmed. In the first place, essential evidence was not fully developed. When Ronald was interrogated with respect to the conveyance, he answered, "Yes, it was agreed Mr. Clark to live in the house as long as he lived," and "there was no discussion why it wasn't put in the deed."
Defendants' counsel had represented Mr. and Mrs. Clark prior to Mrs. Clark's death and was the lawyer who, at Clark's *326 request, prepared the deed to Ronald. What instructions were given to counsel we do not know. There was no evidence as to what, if any, services or maintenance on Clark's behalf were contemplated in addition to permitting him to live in the house, nor was there any proof as to the market value of the premises at the time of the conveyance. The record fails to fully disclose the details surrounding the transfer, the true consideration for the deed, or the actual intent of the parties in making the transfer. Counsel stated at oral argument that he did not think a written agreement or a recital in the deed was necessary because he knew Ronald and knew he would treat Clark properly and take care of him. Counsel was the only witness who could shed further light on this crucial area of the case.
The facts might have been explored more fully had defendants' counsel taken the witness stand, but the practice, whereby an attorney for a party testifies in the interest of his client on the merits of the case, has been severely criticized. See Callen v. Gill, 7 N.J. 312, 316 (1957), and cases there cited; Lau Ah Yew v. Dulles, 257 F.2d 744, 746 (9 Cir. 1958); Pierce v. Yaccarino, 72 N.J. Super. 252, 261 (App. Div. 1962); Drinker, Legal Ethics, pp. 158-159 (1953); Annotation, "Impropriety of attorney testifying for client as ground of exclusion of testimony otherwise admissible," 118 A.L.R. 954 (1939).
An attorney should not accept employment in cases in which he knows, or has reason to believe, his testimony will be essential. Note, Canon 19 of the Canons of Professional Ethics, adopted by the American Bar Association and made applicable by R.R. 1:25 to the conduct of members of the bar of this State. See A.B.A. Comm. on Professional Ethics, Opinions, No. 50 (1931); Informal Opinion No. 887, referred to in American Bar Association, Opinions on Professional Ethics (1967 ed.), p. 64. Cf. N.J. Advisory Committee on Professional Ethics, Opinion 95, 89 N.J.L.J. 401 (1966). Note also, Canons 6 and 37.
*327 As observed by Drinker, "When the interests of clients diverge and become antagonistic their lawyer must be absolutely impartial between them, which, unless they both or all desire him to represent them both or all, usually means that he may represent none of them." Op. cit., at p. 112. The lawyer should decline the second retainer where there is any serious doubt. He should avoid not only situations where the conflict of interest is present "but also those in which a conflict is likely to develop." Id., at p. 105. See N.J. Advisory Committee on Professional Ethics, Opinion 42, 87 N.J.L.J. 285 (1964).
Although there is nothing in the record to suggest any suppression of evidence, misrepresentation, or bad faith on the part of counsel representing the defendants, we are convinced that essential justice requires a new trial. The attorney who prepared the deed in controversy should not be an advocate against the grantor but should be available to testify at the retrial as an impartial witness.
Reversed and remanded for new trial consistent with this opinion.