**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1161-20

H.I.,[1]

    Plaintiff-Respondent,

v.

S.I. n/k/a S.S.,

    Defendant-Appellant.

_____

        Submitted September 13, 2021 – Decided September 20, 2021

        Before Judges Sabatino and Natali.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0339-11.

        Weinberg & Cooper, LLC, attorneys for appellant (Melissa E. Cohen and Gale B. Weinberg, on the briefs).

        Atkins, Tafuri, Minassian, D'Amato & Beane, PA, attorneys for respondent (Robert J. Tafuri and Christian L. Beane, on the brief).

---

[1] We use initials in this opinion to refer to the child and his parents and the sealed Family Part records to protect the child's privacy interests. R. 1:38-3(d).

PER CURIAM

In this post-judgment matrimonial matter, defendant S.I., now known as S.S. ("the mother"), seeks reversal of Judge Magali M. Francois' November 18, 2020 order denying her motion which sought, in essence, to accelerate the process of her potential reunification with the parties' son, X.I. ("the son").

At the time of the motion practice, the son was twelve years old and living with his father, plaintiff H.I.; his stepmother; and his younger brother, who is the child of the father's second marriage. The parties divorced in December 2010. The mother has a long history of alcoholism, undergoing treatment, and relapsing, although she asserts that she has been sober for nearly three years and has been working in the field of education after reportedly earning a master's degree.

The son has suffered emotional trauma due to the consequences of his mother's alcoholism and his parents' divorce. As a young child, he apparently witnessed his mother get arrested after being drunk and passed out at a New York City bus stop. More recently, the son alleged that during one of the mother's supervised visits with him, she was abusive to him and frightened him, at one point allegedly locking him in a closet. This allegation, which the mother disputes, was investigated by a child welfare agency in New York City, where

2

the mother resides, at the referral of the son's then-therapist, but apparently the agency did not find evidence that the allegations were true. This incident did not result in a change in the mother's custody rights.

The father became the primary caretaker at the time of the divorce, with liberal supervised parenting time initially awarded to the mother, who resided intermittently in addiction-treatment facilities. In addition, a Guardian Ad Litem ("GAL") for the son was appointed in 2016 and her successor GAL continues to be involved in this matter. A parenting coordinator was also appointed to deal with the parties' persisting conflicts.

Since September 2016, the son has been receiving therapy from Dr. Larissa Labay, a psychologist. In addition, he has been periodically evaluated by a court-appointed psychologist, Dr. Allison Strasser Winston.

In February 2020, the parties entered into a consent order to establish a plan for the son and mother to begin reunification therapy together, the goal of which is to reacquaint the two and work towards developing a renewed relationship. The consent order contemplated that the son may not be ready to begin such therapy, and accordingly provided for the son to be evaluated by his therapists to assess his emotional readiness. Thereafter, Dr. Strasser Winston and Dr. Labay both submitted expert reports several months later in October

2020, independently recommending against taking any steps at that time toward reunification therapy.

Both experts believe that the son is not ready to begin reunifying with his mother and that he continues to be traumatized by her previous behavior. The son has expressed that he does not wish to see his mother, who has apparently not seen him since 2017. In particular, Dr. Labay made the following observations and recommendations:

> Over time, it became clear that [the son] was thriving in his father's home. Behavioral issues had subsided, he was excelling socially and academically, and he reported strong and positive relationships with his father, stepmother, and half-brother. [The son] began to express that he no longer wanted to attend therapy, because he did not want to revisit negative aspects of his history on a weekly basis. It was my belief as his therapist that sessions were more disruptive than productive, and that they interfered with [the son's] ability to move forward freely and enjoy his current circumstances. Trauma-based CBT therapy is the approach most often used when children have had experiences of abuse or neglect in their past. However, it is believed that children need to be encouraged to process their traumatic experiences gradually and only in a way that they can handle both cognitively and emotionally. If this type of therapy is forced upon children before they are willing and equipped to participate, therapy can do more harm than good and can potentially retraumatize them.
>
> [(Emphasis added).]

Dr. Labay concluded:

> Given the belief that [the son] does not exhibit this level of readiness, paired with his significant psychological improvement, [the son's] therapy was shifted to an "as needed" basis, which is where it currently stands. His father and stepmother are aware that they can access therapy if any concerns arise, and [the son] knows to request sessions if he would like to meet.
>
> I have expressed in earlier communications my belief that [the son] should be re-evaluated every 3 months to determine his level of readiness for reunification. If [the son] verbalizes a desire to resume contact with his mother, he and [the mother] should work with a reunification therapist who can develop a gradual, stepwise, plan for in-person parenting time. Reunification attempts must be carefully monitored and any negative outcomes must be considered when deciding whether or not to proceed. All visits should involve professional supervisors who can effectively facilitate stable and safe visitation if in-person visits are to resume.
>
> [(Emphasis added).]

On appeal, the mother argues the experts' opinions are skewed and do not adequately consider her current sobriety and the affirmative steps she has taken to become a stable parent. The mother further argues the experts and the judge improperly relied on the expressed preferences of a twelve-year-old boy.

After hearing oral argument from counsel, Judge Francois denied the mother's application. She adopted Dr. Labay's recommendation that the son be

5

re-evaluated every three months to assess his readiness to begin reunification therapy.

In her oral ruling, the judge noted, among other things, the importance of not causing harm to the child, observing that "the child is not ready to do anymore than what is already happening. . . ." The judge did reject, however, the father's request that the court restrain the mother from bringing any further motions concerning the appointment of new experts and requesting new psychological evaluations of the son.

We review on appeal the Family Part judge's determinations in this matter through a prism of substantial deference. In general, the decisions of Family Part judges are not set aside unless the appellant demonstrates that those decisions are legally unsound or lack support in the record with substantial credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); Pascale v. Pascale, 113 N.J. 20, 33 (1988). We must be cognizant of the judge's "feel for the case," especially given the expertise of the Family Part in dealing with family disputes on a daily basis. Cesare, 154 N.J. at 412 (quoting Pascale, 113 N.J. at 33).

Although parents have a presumptive constitutional right to have a relationship with their children, those rights at times must yield to the best

interests of those children. <u>In re Guardianship of K.H.O.</u>, 161 N.J. 337, 347-48 (1999). The court has a parens patriae responsibility to consider the welfare of the child in resolving disputes over custody and the terms and conditions of parenting time. <u>Borra v. Borra</u>, 333 N.J. Super. 607, 611-12 (Ch. Div. 2000).

In the present case, we discern no basis to second-guess the Family Part's determination that it was not in the son's best interests to force him to commence reunification therapy at that time. The judge reasonably relied upon the expert opinions of both Dr. Labay and Dr. Strasser Winston in declining the mother's application to require the therapeutic process to begin immediately. <u>See</u> <u>City of Long Branch v. Liu</u>, 203 N.J. 464, 491 (2010) (underscoring the fact finder's role in assessing the import of expert opinions).

The court also reasonably considered the concerns voiced by the GAL about preventing the infliction of further harm upon the child. The GAL re-interviewed the son around the time of the motion practice and reported that the son "presented as frantic at the thought of seeing his mother again" and was "very agitated emotionally at [the GAL's] suggestion and questions" on the topic. The trial court did not, as the mother asserts, abdicate its decision-making role, but instead thoughtfully analyzed the child's best interests on the record supplied.

The mother argues that the trial court, the GAL, and the experts unduly deferred to the son's expressed desires. In this regard, she relies on a passage in a 1951 Supreme Court opinion, Callen v. Gill, 7 N.J. 312, 320 (1951), which observed that "[a] 12-year-old child has not attained that ripened discretion which enables him to determine conclusively what his own welfare demands . . . ." The mother overstates the significance of that rather old observation. Case law has since clarified that a child's preferences, while not dispositive, are important factors in the court's decisions. See, e.g., Wilke v. Culp, 196 N.J. Super. 487, 498 (App. Div. 1984); Lavene v. Lavene, 148 N.J. Super. 267, 272 (App. Div. 1977).

We have not regarded a child's age of twelve as categorially too immature to qualify as relevant to the court's analysis. Indeed, Rule 5:8-6 authorizes Family Part judges to interview children within the court's discretion, without specifying age limitations. Historically, such interviews were deemed appropriate for children who were at least seven years old. Robert A. Fall & Curtis J. Romanowski, Current N.J. Child Custody, Protection & Support Family Law §23:3-6 (c)(2021).

Here, the twelve-year old son's expressed anxiety and fear about resuming contact with his mother was a relevant and important factor to be considered by

the experts and the judge. There was no need for a plenary hearing. In this regard, we note the GAL's cautionary observation that subjecting the son to additional interviews for litigation purposes could further traumatize him.

That all said, we appreciate the positive steps the mother has made towards sobriety and stability, and her understandable desire to resume in-person contact with her son. Nothing in the November 18, 2020 order, which was entered about ten months ago, prevents the Family Part from reexamining the status quo. Indeed, if the recommended three-month cycle was observed, by now there should have been three updates provided to the GAL. We neither discourage nor encourage future motion practice, nor discourage the trial court and the experts from reconsidering the three-month pattern as circumstances unfold.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                      A-1161-20