IN THE MATTER OF GUY A. GIBBONS, JR.

(Filed 21 November, 1956.)

**1. Infants § 22—**

In determining the right to custody of an infant, the paramount consideration, to which all other factors must yield, is the welfare and best interest of the child.

**2. Appeal and Error § 49—**

> The findings of fact of the trial court are conclusive when supported by competent evidence received in a properly constituted hearing.

**3. Constitutional Law § 20—**

> Parties have the fundamental right to be present in court when evidence is offered and to an opportunity to rebut it, and when parol evidence is offered, to cross-examine the witnesses.

**4. Evidence § 22—**

> While the court has power to confine cross-examination to its proper scope and proper limits, it may not entirely deny a party the right to cross-examine the witnesses of his adversary.

**5. Infants § 22—**

> In a proceeding to determine the right of custody of a minor child, the action of the court in conferring with witnesses in his chambers in the absence of one of the parties deprives such party of a constitutional right, vitiating the decree awarding custody.

JOHNSON, J., not sitting.

APPEAL by petitioner from *Hobgood, J.*, March Civil Term 1956, WAKE.

This action was instituted in the Domestic Relations Court of Wake County in October 1954 by petition of Richard Bright, hereinafter referred to as petitioner. The petition asserted that Guy A. Gibbons, Jr., an infant under sixteen years, was a neglected child under such improper or insufficient control as to endanger the health and general welfare of the infant. It also asserted that the custody of the infant was in controversy. Guy A. Gibbons, Sr., hereinafter referred to as respondent, denied the allegations of the petition. From a judgment adverse to petitioner an appeal was taken to the Superior Court of Wake County. The cause was heard at the March Term 1956 on affidavits and oral testimony submitted by petitioner and respondent. The court made findings of fact and conclusions of law based on the facts found and awarded custody of the child to respondent. Petitioner excepted to the findings of fact and the conclusions of law based thereon. From the judgment awarding custody of the child to respondent, petitioner appealed.

*J. L. Emanuel, Hill Yarborough, and Robert L. Emanuel for petitioner appellant.*

*Manning & Fulton for respondent appellee.*

RODMAN, J.   Guy A. Gibbons, Jr., was born 26 April, 1947. Adoption proceedings were initiated by Guy A. Gibbons, Sr., and wife, Rebecca

Gibbons, on 23 February, 1948, and final order of adoption was entered 30 April, 1949. In June 1949 Rebecca Gibbons died. Following her death, the child was taken to Miss Ruth Lindley, who lived at Guilford College. Miss Lindley, a sister of Mrs. Gibbons, was a school teacher. She was unable to care for the child after the school opened in September. Hence the child was returned to the respondent in Raleigh. He placed the child in the home of Mrs. Ralph Turner, who operated a boarding home for children. When the child had been at the boarding home about two weeks, Mrs. Turner notified respondent that she could not continue to keep the child, whereupon she was directed to find a suitable home for the child. Pursuant to this direction, Mrs. Turner placed the infant with the petitioner, Richard Bright, in September 1949. The infant remained in the home of petitioner and his wife, except for short visits to respondent, until 1 August, 1954. On that date, respondent and another man went to New Hope Baptist Church while Sunday School was in session and forcibly took Guy Gibbons, Jr., from the Sunday School where he had been sent by the petitioner and his wife. For this, respondent was indicted and convicted of disturbing religious worship.

Respondent made small contributions to the support of the infant in 1949, 1950, and 1951. No contributions were made thereafter while he was in the custody of petitioner.

In September 1952 respondent married Harriet Scott, a lady of excellent character. Respondent and his wife live in Raleigh. Mrs. Gibbons is regularly employed with the probation office of the Federal Government.

The court found that the petitioner and his wife are both of excellent character. Petitioner is employed as a professor in the Chemical Engineering Department of North Carolina State College and has been so employed for many years. Petitioner and his wife are active in church, educational, and community life of their community, own their own home, have no children of their own, and plan, upon their death, to leave their home to Guy A. Gibbons, Jr. The court further found:

"That the home life of Guy A. Gibbons, Jr. while he lived with Mr. and Mrs. Bright was happy and cheerful and the said Mr. and Mrs. Bright took particular pains to see that he appeared neat, clean, and saw to it that he was given proper medical attention at all times."

"That Guy A. Gibbons, Sr. is not a man of bad character. He owns his own home and he is the owner of and engaged in the business of operating a service station and a small nursery on U. S. Highway No. 1 about seven miles north of Raleigh and near the Millbrook community."

"That from the time of the death of his first wife, Rebecca L. Gibbons, in 1949, until a few months ago the said Guy A. Gibbons, Sr. was addicted to the excessive use of alcohol to such an extent that he fre-

quently became intoxicated and he became a member of Alcoholics Anonymous."

Then follows a finding that respondent was convicted of a misdemeanor relating to the operation of an automobile in each of the years 1950, 1951, and 1952. "That except as hereinabove set forth said Guy A. Gibbons, Sr. has been a law-abiding citizen, has attended church regularly, engaged continuously in business in Wake County, North Carolina for several years and does not appear to have any vices except an addiction to excessive use of alcohol."

The court made these additional findings, each of which was excepted to by petitioner:

"That during the time the said child has lived with Mr. and Mrs. Gibbons, Sr. since August 1, 1954, he has progressed normally in his physical development, in his school grades, and in his aptitudes; however, the child appears to be uncertain as to what his proper attitude should be as between the petitioner and the respondent, due to their conflict of interest in seeking complete custody and control of said child and said child freely admits his desire to live with Mr. and Mrs. Richard Bright due to the fact that they furnished more clothes for him, provided him with more toys and playground equipment, AND DO NOT PUNISH HIM WHEN HE MISBEHAVES; WHEREAS, ON THE CONTRARY, THE GIBBONS DO PUNISH HIM WHEN HE MISBEHAVES. (EMPHASIS by Hamilton H. Hobgood)."

"That this Court has held three conferences in chambers with Guy A. Gibbons, Jr. without either Mr. or Mrs. Bright or Mr. or Mrs. Guy A. Gibbons, Sr. being present, this being done with the view of obtaining full knowledge of the child's problems and attachment with reference to the petitioner and the respondent.

"That the respondent Guy A. Gibbons, Sr. and his wife, Harriet Scott Gibbons, are fit, suitable and proper persons to have the care, custody and control of Guy A. Gibbons, Jr., the adopted child of Guy A. Gibbons, Sr.; and the Court further finds as a fact that Guy A. Gibbons, Sr. has a comfortable home and finds, further, that Guy A. Gibbons, Sr. and his wife, Harriet S. Gibbons are giving said minor child, Guy A. Gibbons, Jr., proper instruction and supervision to the extent as to promote a wholesome and proper development of said minor child and to instill in him social, moral and religious principles and at the same time properly control his conduct in his daily activities so that he may develop as a normal child and be better prepared to meet the normal problems with which he will be faced upon reaching adulthood; and the Court further finds as a fact that Guy A. Gibbons, Sr. and his wife, Harriet S. Gibbons, are giving said child such care as to promote his best welfare, interest and development."

The crucial question in this case, as in all cases involving the custody of an infant, is: What, in fact, is for the best interest of the child? *Schenck, J.*, in *Tyner v. Tyner*, 206 N.C. 776, 175 S.E. 144, said: "In determining the custody of children, their welfare is the paramount consideration. Even parental love must yield to the claims of another, if, after due judicial investigation, it is found that the best interest of the children is subserved thereby."

*Denny, J.*, in *Gafford v. Phelps*, 235 N.C. 218, 69 S.E. 2d 313, said: "The welfare of the child should be the paramount consideration which guides the court in making an award of custody."

*Johnson, J.*, speaking with reference to the custody of children, said in *Griffith v. Griffith*, 240 N.C. 271, 81 S.E. 2d 918: "In such case we apprehend the true rule to be that the court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental, and moral faculties. All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations . . ."

Probably no more difficult task devolves upon a Superior Court Judge than to find the correct answer to the question raised when he is called upon to determine who shall have the custody and control of a little child. Nearly always any decision he makes will produce heartaches. The one denied the right to custody is certain to inquire of himself, "Where, how, and why did I fail to convince the court of my great love and affection for the child? Does not the evidence which the court has heard demonstrate that the party given the custody is not because of habits and character a fit and proper person to rear the child?"

The findings of fact made by the trial judge, like a jury verdict, conclude the parties and are binding on us when supported by competent evidence received at a properly constituted hearing. *Reid v. Johnston*, 241 N.C. 201, 85 S.E. 2d 114; *Radio Station v. Eitel-McCullough*, 232 N.C. 287, 59 S.E. 2d 779; *Griffin v. Griffin*, 237 N.C. 404, 75 S.E. 2d 133; *Gafford v. Phelps, supra.*

The asserted errors are presented by exceptions 15, 6, and 16. The record states exception 15 thus: "On March 22, 1956, in Wake County Superior Court, a hearing was held in the above entitled cause, and following the oral testimony of Guy A. Gibbons, Sr., and Richard Bright, His Honor Hamilton H. Hobgood, Judge Presiding, in open court directed the Sheriff of Wake County to subpoena Rev. J. W. Page, pastor of Fairmont Methodist Church of Raleigh, N. C., and Dr. Owen Herring, pastor of New Hope Baptist Church of Wake County, to appear in open court and give testimony in this case. That the hearing which was scheduled for March 29, 1956, was not held. That thereafter Judge Hobgood did confer with said Rev. J. W. Page and Dr. Owen

Herring in a single conference in his chambers in Wake Superior Court with no one being present except said Rev. J. W. Page, Dr. Owen Herring and Judge Hobgood. To the foregoing action of His Honor, petitioner excepted; and this constitutes petitioner's EXCEPTION No. 15."

Exception 6 is to the finding of fact that the court held three conferences with the infant Guy A. Gibbons, Jr., without any of the parties being present; and exception 16 is to the refusal of the court to permit petitioner to examine the infant in open court.

The basic and fundamental law of the land requires that parties litigant be given an opportunity to be present in court when evidence is offered in order that they may know what evidence has been offered and that they may have an opportunity to rebut the evidence with the opportunity, when parol evidence is offered, to cross-examine the witnesses. *Barnhill, J.* (later *C. J.*), speaking in *Biddix v. Rex Mills,* 237 N.C. 660, 75 S.E. 2d 777, said: "In a judicial proceeding the determinative facts upon which the rights of the parties must be made to rest must be found from admissions made by the parties, facts agreed, stipulations entered into and noted at the hearing, and *evidence offered in open court after all the parties have been given full opportunity to be heard.*" (Emphasis supplied.) To like effect see *In re Custody of Gupton,* 238 N.C. 303, 77 S.E. 2d 716; *S. v. Gordon,* 225 N.C. 241, 34 S.E. 2d 414; *In re Estate of Edwards,* 234 N.C. 202, 66 S.E. 2d 675; *Townsend v. Coach Co.,* 231 N.C. 81, 56 S.E. 2d 39; *S. v. Armstrong,* 232 N.C. 727, 62 S.E. 2d 50; *S. v. Stone,* 226 N.C. 97, 36 S.E. 2d 704; *Bank v. Motor Co.,* 216 N.C. 432, 5 S.E. 2d 318.

The power of the court to confine cross-examination to its proper scope and within proper limits is undoubted. *Crouse v. Vernon,* 232 N.C. 24, 59 S.E. 2d 185; *S. v. Stone, supra; S. v. Tola,* 222 N.C. 406, 23 S.E. 2d 321.

The court committed error in receiving testimony from witnesses without affording petitioner an opportunity to be present and know what evidence was offered.

The fact that the conclusions of law were based on findings of fact made without an opportunity to petitioner to be present when the evidence was offered vitiates the judgment. There is

Error.

JOHNSON, J., not sitting.