JANET L. GENNARINI *v.* FRANK L. GENNARINI
(2317)

DANNEHY, C.P.J., TESTO and BORDEN, Js.

Argued February 7—decision released June 12, 1984

*Ernest C. La Follette,* for the appellant (defendant).

*Dianne M. Ventura,* with whom, on the brief, was *Richard J. Kilcullen,* for the appellee (plaintiff).

BORDEN, J. The principal issue in this appeal[1] concerns the propriety of the trial court's interview in chambers with the seven year old child of the parties, in the absence of the parties and their counsel and over the objection of the defendant. Before the court was the plaintiff's postjudgment motion for modification of an existing postjudgment visitation order. During the course of the hearing, the court, sua sponte, decided to interview the child. The defendant's request for both attorneys to be present was denied. The court interviewed the child in chambers with a court reporter present but sealed the transcript and refused, even after its ruling on the motion for modification was issued, to release the transcript[2] because of a promise of confidentiality it had made to the child. The court modified the judgment by substantially reducing the scope of the defendant's visitation with the child, from which modification the defendant appealed.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The defendant moved in the trial court for unsealing of the transcript for purposes of appellate review. The court denied this motion. The defendant then moved in the Supreme Court for review of this action. The Supreme Court granted the motion for review but denied the relief requested. In view of our disposition of the case it has not been necessary for us to examine the transcript.

In a custody or visitation dispute, the question of the propriety of a private interview between trial court and minor child conducted without the consent of both parties has yielded a range of appellate responses. See, e.g., *Bailey* v. *Bailey,* 3 Ariz. App. 138, 412 P.2d 480 (1966); *Marshall* v. *Stefanides,* 17 Md. App. 364, 302 A.2d 682 (1973); *Roudabush* v. *Roudabush,* 62 Mich. App. 391, 233 N.W.2d 596 (1975); *Callen* v. *Gill,* 7 N.J. 312, 81 A.2d 495 (1951); *Lavene* v. *Lavene,* 148 N.J. Super. 267, 372 A.2d 629 (1977); *Lincoln* v. *Lincoln,* 24 N.Y.2d 270, 247 N.E.2d 659 (1969) (approval of private interview); see also Unif. Marriage and Divorce Act § 404 (a), 9A U.L.A. 203 (1973) (approval of private interview); *Jenkins* v. *Jenkins,* 125 Cal. App. 2d 109, 269 P.2d 908 (1954); *In re Gibbons,* 245 N.C. 24, 95 S.E.2d 85 (1956); *Cook* v. *Cook,* 5 N.C. App. 652, 169 S.E.2d 29 (1969); *Rea* v. *Rea,* 195 Or. 252, 245 P.2d 884 (1952); *Baker* v. *Vidal,* 363 S.W.2d 158 (Tex. Civ. App. 1962) (disapproval of private interview); note, 99 A.L.R.2d 954; comment, "Use of Extra-Record Information in Custody Cases," 24 U. Chi. L. Rev. 349 (1957). For those courts which have approved the practice, the conditions under which such an interview should be conducted and preserved for the record have varied considerably. See, e.g., *Bailey* v. *Bailey,* supra (court's promise of confidentiality to child should be honored); *Marshall* v. *Stefanides,* supra (stenographic record required); *Roudabush* v. *Roudabush,* supra (informal interview approved); *Fleishman* v. *Walters,* 40 App. Div. 2d 622, 336 N.Y.S.2d 511 (1972) (stenographic record required).

We find ourselves in accord with those courts which have prohibited such a practice. We conclude that in the absence of the consent of the parties to such a procedure it is a violation of due process of law for the trial court to interview a minor child in the absence of the

parties and their counsel.[3] *In re Gibbons,* supra; *Cook v. Cook,* supra; see *Jenkins* v. *Jenkins,* supra, 112–13.

We are aware that the judicial practice of interviewing a minor child privately in visitation and custody disputes is not uncommon, either in Connecticut or in other jurisdictions. We are aware, moreover, that it has gained fairly widespread approval by appellate courts. We are also aware, however, as the plaintiff here conceded at oral argument, that such a practice carves out the only place in our jurisprudential landscape in which, without the parties' consent, the factfinder deciding the ultimate merits of a controversy is permitted to consider evidence which is presented to it in the absence of the parties and their counsel. Ordinarily, so-called "secret evidence" has long been thought to be constitutionally invalid. See, e.g., *Interstate Commerce Commission* v. *Louisville & Nashville R.R. Co.,* 227 U.S. 88, 33 S. Ct. 185, 57 L. Ed. 431 (1913); *Jaffe* v. *State Department of Health,* 135 Conn. 339, 345–47, 64 A.2d 330 (1949).

We must begin our inquiry, therefore, with the basic proposition, articulated by our Supreme Court in a closely related context, that in deciding on custody and visitation a court must "exercise [its] authority in a manner consistent with the due process requirements of fair notice and reasonable opportunity to be heard. Without a hearing, a trial court may not adjudicate a question of such vital importance to the parties, and one so inherently fact-bound in its resolution. Before

---

[3] We note that in this protracted and bitterly contested visitation dispute the court did not deem it necessary to appoint an attorney for the minor child. Our Supreme Court has recently and repeatedly emphasized that such an appointment under these circumstances is the better practice. See *Salvio* v. *Salvio,* 186 Conn. 311, 324–25, 441 A.2d 190 (1982); *Presutti* v. *Presutti,* 181 Conn. 622, 637 n.11, 436 A.2d 299 (1980). Such an appointment should have been made here; and when there is such an attorney the absence of that attorney's consent would be of equal constitutional moment.

a parent is permanently deprived of legal custody, or any change is made therein, the usual and ordinary procedures of a proper and orderly hearing must be observed." *Strohmeyer* v. *Strohmeyer,* 183 Conn. 353, 356, 439 A.2d 367 (1981) (court may not, sua sponte, award joint custody in the absence of notice and hearing on that issue). Indeed, our rules of practice recognize this notion by requiring that a family relations case study report must be available to the parties and their counsel prior to the hearing and is only admissible in evidence if its author is available for cross-examination. Practice Book § 479. We note, moreover, that there is no statutory basis for the practice at issue here.[4]

Surely such a legally extraordinary and unique procedure as a private interview between child and fact-finder, involving as it does a radical departure from "the usual and ordinary procedures of a proper and orderly hearing" on such an "inherently fact-bound" determination; *Strohmeyer* v. *Strohmeyer,* supra; must carry with it compelling reasons of necessity and value to the fact-finding process in order to command constitutional approval. Our examination of the reasons and values posited in favor of such a procedure does not persuade us that they justify such a departure.

The principal justifications advanced for the practice are the necessity of ascertaining the child's preferences and feelings to the trial court's very sensitive determination of custody or visitation, and the need to obtain that information in a way which will maximize the child's freedom of expression and avoid the trauma of requiring an expression of those preferences and feel-

---

[4] General Statutes § 46b-49 provides that the court may order that a visitation hearing, inter alia, "be private. The court may exclude all persons except the officers of the court, a court reporter, the parties, their witnesses and their counsel." Cf. General Statutes § 46b-138, which provides that in a juvenile matter the "conversations of the judge with a child or youth whose case is before the court shall be privileged." We express no opinion on the constitutionality of this statute.

ings in the ordinary adversarial setting or in the presence of the parents about whom the child is expressing them. See, e.g., *Lavene* v. *Lavene,* supra; *Lincoln* v. *Lincoln,* supra. We do not deny the sensitivity and difficulty of the custody or visitation decision. Nor do we deny the desirability of avoiding unnecessary trauma to the child involved in such a decision. These justifications, however, rest on several assumptions which we believe to be of sufficient doubt so as not to justify the practice; and they ignore other factors which we believe to be of sufficient weight to require its invalidity.

First, whether the child's preferences and feelings as to custody and visitation are a significant factor in the court's ultimate determination of the best interest of the child will necessarily depend on all the facts of the particular case, including the child's age and ability intelligently to form and express those preferences and feelings. See, e.g., General Statutes § 46b-57.[5] Thus, the necessity of such information is undercut, because it cannot be said that that category of information is so important that the court would almost invariably want or need it. Indeed, in this case the court volunteered, at the hearing on the defendant's motion to release the transcript of the interview, that its decision would not have changed had it not spoken to the child. Thus, in this case the value to the factfinding process was marginal at best.

Second, even when it is elicited, the information may be of questionable accuracy. A child caught up in the maelstrom of family strife may produce, to the psychologically untrained eye and ear, distorted and thus misleading images not only of the child's parents but of the child's own feelings; and those feelings themselves may be transient. See *Lincoln* v. *Lincoln,* supra, 273.

[5] General Statutes § 46b-57 permits the court, in fashioning custody and visitation orders, to "giv[e] consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference."

Third, parents learn through long, and sometimes painful, experience with their children that how a child expresses something is often more important than what is expressed. Our law places a rightful premium on the ability of the factfinder to judge a witness' testimony by his demeanor; see *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 750, 474 A.2d 780 (1984); and thus on the parties' right as well to be present at the witness' testimony so as to be able to challenge that testimony by reference to that demeanor. The trial judge who undertakes, without parental consent, to interview a child in private denies the objecting parent his comparable right, if he wishes to exercise it, to view his child's demeanor and to give the court the benefit of his experience with the child in that regard.[6]

Fourth, the continued vitality of our judicial system rests in part on the continued perception on the part of its participants of the basic fairness of its procedures. So long as the judicial process has, of necessity, committed to it the task of deciding, for parents who cannot agree between themselves, the custody and visitation of their children, the procedures by which that decision is reached must at the least leave those parents with the perception of fairness. Secret evidence secured by the court over a parent's objection can only undermine to an impermissible degree that perception. In this case the trial court's statement to the effect that its decision would have been the same in the absence of the interview cannot be taken to cure the error; that statement cannot be expected to erase the objecting party's reasonable perception of unfairness.

If both parties do not agree to an in chambers interview between the trial judge and the child in their

---

[6] Thus, we regard as constitutionally insufficient the requirement, thought sufficient by some courts; see *Marshall* v. *Stefanides,* 17 Md. App. 364, 302 A.2d 682 (1973); that the record of the interview be made immediately available to the parties.

absence, the full panoply attendant on the usual adversary hearing is not the only choice available to the parties and the court. There is a spectrum of available choices. At one end is the choice of simply proceeding without an expression of preference or feeling from the child. This may result from the fact that neither parent wishes to subject the child to the litigation process in any way. At the other end, of course, is the admittedly distasteful choice of having the child testify as would any other witness. This could only result from a conscious tactical choice by either parent, or both, and their counsel. We believe, however, that the likelihood of this happening with any frequency is minimal; and in any event the trial judge would have the discretion to minimize the impact on the child by requiring that this be heard in chambers or in a closed courtroom. See General Statutes §§ 46b-11 and 46b-49; Practice Book § 478.

In between these two extremes, the court may glean the child's preferences and feelings from the contents of a family relations case study report admitted into evidence under Practice Book § 479; and from the testimony of the domestic relations officer and any experts or other witnesses who have had contact with the child. In this connection, we are in accord with the position taken by the New Jersey courts: "Such few remarks attributed to the child as were given in the testimony did not go to contested facts but to the child's emotional reactions. The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of [or visitation with] an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hear-

say because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts." *Callen* v. *Gill*, 7 N.J. 312, 318, 81 A.2d 495 (1951); see also Tait & LaPlante, Handbook of Conn. Evidence § 11.13 (declarations of state of mind as exception to the hearsay rule).

We emphasize that we do not, by this decision, preclude an interview in chambers between judge and child, in the absence of the parties or their counsel, where both parties and the attorney for the child consent. Whether to conduct such an interview remains, of course, within the court's discretion; and the procedures governing it remain a matter of agreement among all concerned, including the court.[7] If such an interview takes place we strongly recommend that a domestic relations officer, who is likely to be more familiar to the child than the judge, be present. Furthermore, some record of the interview must be made immediately available to the parties before the trial proceeds further, and the record must be preserved for appellate review. The record may be established by a court reporter present at the interview, in which case the notes should be read to the parties and counsel immediately; but that is not necessary. The parties and the court may not deem it necessary that a court reporter be present, in order to maximize the informality of the interview process; in that case the court must, after the interview, state on the record a summary of the interview and invite comments from anyone else present at the interview to supplement its summary. The twin purposes of this record-making requirement are to provide the parties with the evidence which has thus been presented to the fact finder in their absence,

---

[7] For example, the parties and court may agree that neither the parties nor their counsel attend; or that counsel, but not the parties, attend; and that counsel, if attending, may or may not participate in the actual interview process.

so that they can guide themselves accordingly throughout the rest of the hearing, and to preserve for review that part of the evidence which otherwise would be shielded from appellate scrutiny. See *Marshall* v. *Stefanides,* supra.

It follows from what we have said that the court erred in conducting the private interview in this case. This conclusion renders it unnecessary for us to consider the defendant's other claims of error, since it is not clear that they will arise again.

There is error, the judgment modifying the judgment of dissolution is set aside and the case is remanded for a new hearing on the motion for modification.

In this opinion the other judges concurred.