[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is on referral from the Judicial District of Windham at Putnam. It consists of a Motion for Modification dated June 2, 1999 (#151), filed by the plaintiff, Lynn F. Ramos (Feliciano) on June 2, 1999. This motion addresses the plaintiff's desire to relocate from Windham to Southington and to modify the custody and visitation of the parties. The attorney for the minor children has filed a Motion for Contempt dated September 14, 2000 (#174), alleging that the plaintiff failed to comply with an order of the court to pay one-half of her retainer. The defendant has filed a Motion for Contempt dated June 21, 2000 (#168) for an alleged violation of the parenting order regarding Father's Day and for the plaintiff's failure to attend a deposition as scheduled. He also seeks sanctions against the plaintiff for alleged failure of the plaintiff to comply with pre-trial orders of the court. These motions were heard over two trial days. The court received testimony from the parties, a family service evaluator, the defendant's girl friend, and two other friends of the parties. Several exhibits were submitted as evidence.
Because the parties share legal and physical custody at the present time, there is no need to employ the burden-shifting analysis set forth in the landmark Connecticut relocation case, Ireland v. Ireland,246 Conn. 413 (1998). That case is applicable to situations in which there is a custodial parent who seeks to relocate with the child and upset the non-custodial parent's visitation schedule. Here, neither party was designated in the original judgment as the primary residential parent. For this reason, the party seeking to relocate, the plaintiff, must bear the burden of proving all essential facts; the defendant is not CT Page 12255 required to assume the burden of proving that the move will not be in the best interests of the children.
Connecticut General Statutes, Section 46b-56 requires that the court's decision on a motion to modify a custody decree must be based on the best interests of the children. In order to prevail on a motion to modify custody, the moving party must prove by a preponderance of the evidence,Cookson v. Cookson, 201 Conn. 229, 240 (1986), that there has been: ". . . a material change of circumstances which alters the court's finding of the best interests of the child or a finding that the custody order sought to be modified was not based upon the best interests of the child." Hall v. Hall, 186 Conn. 118, 122 (1982). Because the original custody order was based on the best interests of the child, the plaintiff is required to prove a material change in circumstances affecting the court's findings of the children's best interests. Not all changes in circumstances since the date of the judgment are material. Simons v.Simons, 172 Conn. 341, 344 (1977). Although a change in circumstances since the prior order of the court is required, the ultimate test is the best interests of the child. Brubeck v. Burns-Brubeck, 42 Conn. App. 583,585 (1996), citing Stewart v. Stewart, 177 Conn. 401, 407-408 (1979);Ireland v. Ireland, 246 Conn. 413, 430 (1998). In addition, in considering the desire of a parent to relocate with a child to a different state, the court must consider the factors endorsed by the Supreme Court in Ireland:
 "[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements . . . the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships."
Ireland v. Ireland, 246 Conn. 413, 431-32 (1998). These factors are not exclusive, and no single factor may be presumed to have dispositive weight Id., 434. While these factors are expressed in terms of custodial and noncustodial parents, a situation which does not exist in this case, they must still be considered, particularly where at least one of the CT Page 12256 possible outcomes of this case will result in the creation of a primary custodial parent.
These parties during their marriage had two children born to them: Daniel A. Ramos born April 20, 1998 and Kalyana born January 3, 1993. The parties were divorced on July 7, 1998. A separation agreement signed by both parties was incorporated into the judgment by the court. The agreement included a provision that these parents would share joint physical and joint legal custody of their minor children. The agreement specifically provides: "There shall not be a designation of primary residence." In summary, the parties further agreed that the children will be with the father for three out of every eight days coinciding with his days off from work. The parties have followed this schedule since their divorce.
The defendant father works for the Department of Corrections. He works for five days and then is off for three days. Therefore, the days of the week of his "off days" vary from week to week. Sometimes these "off days" fall on weekdays, sometimes during the week. He presently works from 7:45 a.m. to 4:00 p.m.
The plaintiff mother works for the State Judicial Branch in East Hanford. Her work hours are 8:00 a.m. to 4:30 p.m., Monday through Friday. She takes courses at night at Eastern Connecticut State University with the goal of obtaining her B.A. She is presently considered to be in her junior year.
The parties have lived all of their lives in the Windham area. Their parents and siblings also live in Windham county. The children are close to both extended families. The children have attended Windham schools and continue to do so. Daniel attends the local middle school and Kalyana is at the elementary school. Both are doing well in their school work. Both are involved in a program which has them alternate instruction in English and Spanish on a weekly basis. The children have also been sporadically active in Sunday school and other religious instruction at a local church.
The plaintiff would like to relocate from Windham to Southington. She feels that this would give her a shorter commute to work. In light of the heavy traffic on Route 84 during rush hours the court makes no finding on this point. She would like to transfer her schooling to Central Connecticut State University in New Britain. Undoubtedly Southington is much closer to New Britain than is Windham. Another stated reason for the plaintiff's request to relocate is that she feels the schools in Southington are superior to those in Windham. Although the court does not doubt the sincerity of the plaintiff's belief, whether it is true was not CT Page 12257 proven. The plaintiff also feels that the suburban life offered in Southington would have more to offer for her children. Again, there was no proof of this proposition. The court is forced to conclude that the primary reason for the plaintiff's desire to move is to give herself a new start at a greater distance from her ex-husband. She has friends in the Waterbury area near Southington who have provided emotional support and comfort during this litigation. Undoubtedly the plaintiff would like to live closer to them and to enjoy a new social life.
Although, at first glance, a move to Southington with the children does not seem to be of great consequence, it will destroy the parenting plan which the parties agreed to at the time of the dissolution. That plan is based on the uncommon nature of the defendant's work schedule. Because the defendant is off from work for three-day periods which fall at varying times during the week, the children regularly get to see both parents on school days as well as on weekends. This is in sharp contrast to the plaintiff's proposal which would limit the father's role to that of a weekend parent. This is because the defendant would be too far away to bring the children to school in Southington. Thus, the defendant could not be a weekday parent. The plaintiff argues that her plan would give the defendant more "quality time" than he has under the present schedule. The court does not subscribe to this proposition. It is in the best interest of children to see their parents in a variety of settings. These children have had the experience of having both parents get them up and off to school, welcome them home from school, help them with their home work, comfort them after a bad day at school and celebrate with them after a good day at school. These are experiences which would be lost to the children and their father if he were to become strictly a weekend parent. Southington is just far enough away that it would be impossible for the plaintiff to relocate there and still maintain the present shared custody orders.
The strongest argument advanced by the plaintiff is that her relocation to Southington and the proposed change to a more conventional parenting schedule will reduce some of the friction which now exists between the parties. It is clear that the parties continue to have a tempestuous relationship. Because of their proximity to one another and the nature of the parenting plan, they have need to interact with each other frequently. These interactions are frequently stressful and filled with bickering. The parties argue over matters which require a joint decision. As a result, it frequently takes the parties a long time to come to a decision on important issues. One example cited by both parties involved whether to allow their daughter, Kalyana, to take a prescription for Prednisone. This drug had been prescribed for a genetic disorder which manifests itself as something like an allergy of Kalyana's esophagus. The parties had a major argument about giving the drug to CT Page 12258 Kalyana and about whether they should get a second opinion. Each party blames the other for this disagreement. But the net result was that there was a delay of several months before the parties could agree on a course of treatment. Another example involved a recent change in the children's day-care provider which produced misunderstanding and acrimony. As stated by the plaintiff during her testimony, they "always work things out" but only after a lot of fighting, pain and agony.
The family services evaluator, Peter Stahl, recommends that the status quo be maintained, that the parties continue to share physical and legal custody, that no primary residence be designated, and that the parent's access plan remain on the schedule as set forth in the July 1998 dissolution decree. He reasons that it is vital to the children, particularly Danny, that they continue to have significant access to both parents. He feels that this consideration should out-weigh the factors which favor the move. The attorney for the minor children, Attorney Deborah A. Deschamps, submitted proposed orders that propose that: 1) the present orders remain in effect if the plaintiff does not move to Southington, 2) the defendant father be awarded primary physical custody if the plaintiff mother does move to Southington, 3) the parties participate in counseling to work on communication and conflict resolution, and 4) the children continue in counseling.
The children enjoy a good relationship with both parties. Both parents take an active interest in all aspects of their children's lives. Both parents attend school events and go to medical appointments with the children. The children have frequent contact with their extended families on both sides. The children want both parents in their lives. The children have expressed to Mr. Stahl and to their attorney that they do not want to see either of their parents only on weekends. They expressed a preference to stay in Windham. However, very little weight will be given to these expressions of the children. It is best to remember that:
 "A child caught up in the maelstrom of family strife may produce, to the psychologically untrained eye and ear, distorted and thus misleading images not only of the child's parents but of the child's own feelings; and those feelings themselves may be transient."
Gennarino v. Gennarino, 2 Conn. App. 132, 137 (1984).
The court notes that for most of the past five years there has been litigation between their parents. The action for dissolution was commenced in April of 1995. The dissolution was granted in May of 1998 and this motion to modify was filed in June of 1999. As far as conflict between the parties goes, nothing has changed since the dissolution was CT Page 12259 commenced in 1995. The parties argued then and they argue now. But at the time of the dissolution there was an agreement of the parties which was approved by the court and incorporated into the judgment that it was in the best interests of the children to share custody and access. It is clear that the joint parenting agreement was designed by the parties to achieve a continued close physical and emotional relationship between each parent and the children. The plan has been successful in this respect. It is also clear that in reaching this agreement the parties gave considerable thought and planning as to their combined roles in raising their children. They came to the conclusion at the time that the negative impact of their constant bickering was out-weighed by the positive impact of the joint parenting plan. Nothing has changed to alter that conclusion.
It is significant that the parties have not complied with the requirement of their separation agreement which states that they must commence individual parenting classes to address communication issues and to reduce conflict in the family. Further, on May, 4, 2000, the parties both signed a written order, approved by the court, which states:
"The parties will attend counseling with a licensed psychologist for the purpose of working on their issues of communication and conflict resolution and parenting relationship. The parties will see the counselor individually and/or together as recommended by the counselor. The parties will follow the recommendations of the counselor." The parties did not abide by this order. However, there was testimony that both parties have finally made appointments for parenting classes with a counselor selected by the attorney for the minor children. Certainly the parties must complete these classes with an open mind as a first step in improving their communication about important issues involving the children.
The court finds that relocating the children to Southington would have a significant negative affect upon the quality of the relationship that exists between the children and their father. The plaintiff has not proven that there has been a material change of circumstances which alters the original finding at the time of the dissolution of the best interests of the children or that the custody order was not based upon the best interests of the children. Accordingly, it is the order of the court that the minor children, Daniel Ramos and Kalyana Ramos, not be relocated to Southington. Because the plaintiff testified that she did not intend to move without the children, the court declines to make an order which would be contingent upon her move without the children.
Because there will be no change in the parenting plan, there is no need to change the present child support order which was based on a deviation from the Guideline support amount because the parties have a shared CT Page 12260 custody plan. There was no evidence presented of a substantial change in circumstance of the finances of the parties which would dictate a change in the current child support order.
The fees and costs of the attorney for the minor children are found to be fair and reasonable. Each party is to pay one-half of the total fee of $5,235 with each party being given credit for payments already made. The attorney for the minor children has filed a motion that the plaintiff be held in contempt for failure to pay her one-half share of the attorney for the minor children's retainer as ordered by the court on May 4, 2000. Having considered the matter carefully, the court will deny the motion on the ground that adding to the financial obligations of the plaintiff at this time would serve no useful purpose.
The defendant has moved for contempt because he claims to have been wrongfully denied the right to have the children overnight on Father's Day. The defendant had to work on Father's Day and was unable to pick up the children until late afternoon. The defendant wanted to keep the children overnight; the plaintiff refused. The defendant decided not to take the children at all rather than return them before bedtime. The agreement merely says that:
"Mothers Day shall be spent with the mother and Father's Day shall be spent with the father." In the absence of any other clarifying language, the court does not find the plaintiff to have been in contempt. It was not unreasonable for her to have taken the position that she did.
The court orders:
1. The plaintiff's Motion For Modification dated June 2, 1999 is denied.
2. The attorney for the minor children's Motion for Contempt dated September 14, 2000 is denied.
3. The defendant's Motion for Contempt for failure to attend a deposition on August 10, 1999 is denied. The plaintiff made a mistake about the starting time of the deposition. When she realized her mistake, she called to say that she would be late. Unfortunately, the defendant's attorney's schedule did not allow the deposition to proceed that day. The court exercises it's discretion to find that the plaintiff should not be sanctioned for her mistake.
4. The defendant's request for sanctions for failure to comply with pre-trial orders of the court is denied. The plaintiff did file the required documents with the court in a timely fashion. However she did not certify copies to counsel. The plaintiff was pro se at the time. The CT Page 12261 court exercises it's discretion to find that the plaintiff should not be sanctioned.
5. The parties shall each pay one-half of the fees and costs of Attorney Deborah Deschamps, the attorney for the minor children. These fees and costs total $5,325; one-half of which is $2,617.50. After giving the plaintiff credit for prior payments, the plaintiff owes $2,517.50. The plaintiff shall pay this sum as follows: $517.50 on or before November 1, 2000; $2,000 in 20 monthly installments of $100 each beginning on December 1, 2000 and on the first day of each month thereafter until paid in full. After giving the defendant credit for prior payments, the defendant owes $1,117.50. The defendant shall pay this sum as follows: $117.50 on or before November 1, 2000; $1,000 in 10 monthly payments of $100 each beginning on December 1, 2000 and on the first day of each month thereafter until paid in full.
By the court,
John W. Pickard, Judge