[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage came to the Regional Family Trial Docket on referral from the Judicial District of Waterbury. The parties and the minor children were all represented by counsel. Over two trial days the parties efficiently presented evidence on the issues of custody and visitation, child support, alimony, division of assets and liabilities, and the award of counsel fees. Many exhibits were entered into evidence. The court has considered all of the credible evidence and all of the statutory criteria for the orders to be issued. The statutory CT Page 6871 criteria will not be restated here.
The parties were married on May 7, 1988 in Waterbury, Connecticut. They have two minor children issue of this marriage, namely Jessica Rose Langley born June 7, 1991, and Rachel Marie Langley born September 15, 1995. No other minor children have been born to the wife since the date of the marriage. Neither party has been the recipient of state assistance. The marriage of the parties has broken down irretrievably with no hope of reconciliation.
The plaintiff, Rosemane Langley (Ms. Langley), is 41 years of age. She is in good general health. She has earned an Associates Degree and is only a few courses short of receiving her Bachelor's Degree. At the time of the marriage Ms. Langley was working at Aetna and she continued there until 1993. She has worked at a series of jobs since that time. Her current employment is as a service associate at Group Insurance Services, Inc. with a weekly gross of $374.13 and a net of $295.68. Ms. Langley lives with the children in the former marital home at 5 Woodward Road in Wolcott. The children attend the local public elementary school.
The defendant, Charles A. Langley (Mr. Langley), is 38 years of age. He is in good general health. He has a 17 year old son from a previous relationship. Mr. Langley is living with a woman with whom he has an infant daughter. He does not have a high school education. He is a union foreman carpenter. At the time of the marriage he had his own business. For the past 8 or 9 years he has been employed at AA Drywall and Acoustics, Inc. as a carpenter. His current weekly wage is $1,030.36 gross and $717.69 net. But he can expect to receive overtime and bonuses which will boost his average gross to $1,145 per week and his average weekly net to $826.57 per week. The pendente lite order is $187 per week and there is an arrearage which has been the subject of a proceeding in the Magistrate Court.
By all accounts the children are doing well in school and in their social development. Jessica is described as a good student who is well liked by her peers and her teachers. She was recently chosen as Student of the Month. Rachel is very energetic and strong willed. She is having no problems in kindergarten. She has a serious orthopedic problem with one of her feet for which she seems to be receiving appropriate care. Most of the credit for the children's positive development must be given to Ms. Langley who has been the principal care giver. As discussed below, Ms. Langley must now work on helping the children develop their relationship with their father rather than fostering negative feelings about him.
Problems in the marriage developed over time. The parties began to CT Page 6872 argue over many things including whether Mr. Langley's son, Eric Waas, should come to live with them. Mr. Langley handled the many arguments by going out and drinking to excess. He would come home late at night in an intoxicated condition and there would be screaming arguments with Ms. Langley. The children were witnesses to at least some of these arguments. Ms. Langley called her father several times to come to the house and intervene. On two occasions Mr. Langley put his hands on Ms. Langley in the midst of the arguments. There were no injuries or arrests. Although both parties share the fault for the breakdown in the marriage, a majority of the fault lies with Mr. Langley in resorting to the bottle in an attempt to avoid a direct solution to the problems that the parties were having. Now that he is in a new relationship, Mr. Langley is no longer abusing alcohol. His present relationship is stable and does not include the arguing that characterized his relationship with Ms. Langley.
The major issue in the case involves the visitation to be accorded Mr. Langley. All parties are in agreement that the children should continue to have their primary residence with Ms. Langley. Ms. Langley believes that Mr. Langley should have no overnight visitation with the children. She feels that Mr. Langley is an alcoholic with an anger problem who poses a threat to the safety of the children. Mr. Langley feels that he can make a positive contribution to the lives of his children and would like to have the normal overnight visitation customarily accorded to a noncustodial parent.
The Family Relations evaluator, Michael B. Elder, testified that he saw no reason why Mr. Langley should not have overnight visitation. Mr. Langley's girl friend of over two years confirmed to Mr. Elder that there is no indication that Mr. Langley is alcoholic or abusive. Mr. Langley has been seeing the children on Sunday afternoons without any negative consequences. Mr. Langley lives in a spacious home with adequate facilities for the children including their own bedroom with separate beds. The court found Mr. Elder's testimony to be persuasive. The court also found Mr. Langley to be a loving father who truly has the best interests of his children at heart.
The attorney for the minor children faithfully advocated the position of the children as expressed to him. The children stated to him that they did not want to have overnight visitation with their father, although Rachel said that she wanted to see him more. However, there is evidence that Ms. Langley has been influencing the children against their father. They seem to parrot the same complaints expressed by Ms. Langley. On at least one occasion Ms. Langley used Jessica to call Mr. Langley to demand that he pay his child support. Mr. Elder concluded that Ms. Langley ". . . has used the minor children as pawns in the worst way." Therefore, CT Page 6873 there is reason to discount the present attitude of the children as being mostly a reflection of their mother's attitude. Also, it is always good to remember that:
 "A child caught up in the maelstrom of family strife may produce, to the psychologically untrained eye and ear, distorted and thus misleading images not only of the child's parents but of the child's own feelings; and these feelings themselves may be transient."
 Gennarino v. Gennarino, 2 Conn. App. 132, 137 (1984).
It is in the best interests of these young children that they develop a strong, positive relationship with their father. This can happen only if Mr. Langley is allowed to spend more time with his daughters than at present. Also, Ms. Langley must put aside the bitterness that she feels toward Mr. Langley and allow the children to arrive at their own conclusions about their father.
For these reasons, Mr. Langley will be permitted visitation which evolves into alternating weekends from Friday evening to Sunday evening, together with alternating holidays. Mr. Langley's son Eric was living with Mr. Langley but is now out of the house after having some trouble with the law involving reckless immaturity. Mr. Langley testified that Eric will not be returning to the house. At the present time he should not be left alone with the children.
The court issues the following orders:
1. The marriage of the parties is dissolved.
2. The parties shall share joint legal custody of the minor children. However, if the parties reach an impasse in decision making on matters pertaining to the children's education, medical and dental care, religious training, discipline, and moral values, Ms. Langley shall be the final decision maker. Prior to making a final decision on these matters, Ms. Langley must confer with Mr. Langley and consider his opinions and recommendations with a view to arriving at a harmonious policy calculated to promote the best interests of the children.
3. Primary residence of the minor children shall be with Ms. Langley. Mr. Langley shall have visitation with the minor children as follows:
A. From 11:00 a.m. to 7:00 p.m. on June 3, 2001, June 10, 2001, June 17, 2001, and June 24, 2001. CT Page 6874
B. From Saturday noon to Sunday at 7:00 p.m. on the weekends of June 30, 2001, July 14, 2001 and July 28, 2001.
C. Beginning with August 10, 2001, on alternating weekends from Friday at 6:00 p.m. until Sunday at 7:00 p.m.
D. Beginning in 2002, Mr. Langley shall be entitled to an uninterrupted period of 7 days vacation time with the children each summer during the children's school vacation. Mr. Langley shall notify Ms. Langley by May 15 of each year as to when during the summer he will be taking this vacation time.
E. Holiday visitation, which shall preempt regular visitation, shall be as follows:
 i. In 2001, Mr. Langley shall have visitation with the children on Christmas Day from 1:00 p.m. until 7:00 p.m.
 ii. Beginning in the year 2002, Mr. Langley shall have holiday visitation with the children in even numbered years as follows:
Christmas Eve from 8:00 a.m. until Christmas Day at 1:00 p.m.
Memorial Day
Labor Day
Halloween between 4:00 p.m. and 8:00 p.m.
 Beginning in the year 2003, Mr. Langley shall have holiday visitation with the children in odd numbered years as follows:
Christmas Day from 1:00 p.m. until 7:00 p.m. on January 1
Easter Day from 9:00 a.m. until 7:00 p.m.
July 4
Thanksgiving Day from 9:00 a.m. until 7:00 p.m.
 iii. Mother's Day shall always be spent with Ms. Langley and Father's Day shall always be spent with Mr. Langley.
F. Once the overnight visitations begin, the children shall be allowed to call their mother before their bedtimes. CT Page 6875
G. Mr. Langley shall not consume alcoholic beverages on the day of any visitation.
H. Until further order of the court, Mr. Langley's son, Eric Waas, shall not be permitted to be alone with the minor children.
4. Mr. Langley shall pay child support to Ms. Langley in the amount of $201 per week. Child support shall be payable until each child attains the age of 18 years, but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years. In addition, Mr. Langley shall pay to Ms. Langley 47% of the total daycare expenses she incurs to enable her to maintain her employment. The present daycare expense incurred by Ms. Langley is $100 per week. Therefore, Mr. Langley's present obligation is $47 per week. However, the court expects this figure to change over time, and that Mr. Langley's obligation will be adjusted accordingly. Payment shall be by immediate wage withholding. The parties are ordered to give notice to each other of any changes in their employment in regard to hours worked, rate of pay, and place of employment. This notice shall be provided within ten days of the change.
5. Mr. Langley shall pay to Ms. Langley periodic alimony in the amount of $100 per week for a period of one year and then periodic alimony shall be reduced to $50 per week for a period of three more years. Alimony is non-modifiable as to term. Alimony shall also terminate upon the death of either party, Ms. Langley's remarriage, or cohabitation as provided by statute.
6. Mr. Langley shall maintain the current health insurance or its equivalent for the benefit of the minor children. Each year Ms. Langley, shall pay the first $100 of each child's health care expenditure not paid by insurance; thereafter, in accordance with the Guidelines, Ms. Langley shall pay 53% and Mr. Langley shall pay 47% of health care expenditures not paid by insurance.
7. Within 30 days, Mr. Langley is ordered to convey to Ms. Langley his interest in the marital home at 5 Woodward Road in Wolcott, Connecticut. Ms. Langley shall be solely responsible for payment of the mortgage and taxes, including all arrearage, and shall indemnify and save Mr. Langley harmless from liability for these obligations.
8. Each party shall retain the vehicle they are currently driving, free and clear of the claims of the other party.
9. Mr. Langley shall maintain the policy of life insurance provided by his employer with the minor children named as beneficiaries. CT Page 6876
10. Ms. Langley shall be solely responsible for payment of the debts to Children's Village and to SNET as listed on her financial affidavit and shall indemnify and hold Mr. Langley harmless from liability for these bills. The parties shall each be responsible for payment of one-half of the following joint debts of the marriage: Waterbury Hospital, Diagnostic Radiology, Center for Women's Health, Naugatuck Valley Computer Images, and Biometrics. Each of the parties shall be solely responsible for any other debts shown on their respective financial affidavits and they shall indemnify and hold the other party harmless for liability for the same.
11. Mr. Langley shall be entitled to claim both children as dependency exemptions on his 2001 and 2002 income tax returns, provided that he is entitled to do so under Federal law. Thereafter, Ms. Langley shall be entitled to take the younger child, Rachel, as a dependency exemption and Mr. Langley shall be entitled to take the older child, Jessica, as a dependency, but only if they are entitled to do so under Federal law. Once Mr. Langley is no longer able to take Jessica as a dependency exemption, the parties shall alternate the dependency exemption for Rachel. Mr. Langley shall be entitled to claim the dependency exemptions set forth above if he is current in his child support on December 31 of the year for which the exemption is claimed.
12. The parties shall sell their Cape Cod time-share as soon as possible. All unpaid maintenance fees and costs of sale shall be paid from the proceeds of the sale. The net proceeds or loss from the sale shall be divided equally subject to the obligation to pay Attorney Diamond established below.
13. The parties shall each pay one-half of the fees and costs of Attorney Bruce W. Diamond, attorney for the minor children, in the total amount of $4,935. Mr. Langley shall receive credit for a previous payment of $400. Therefore, he owes $2,067.50. Ms. Langley shall receive credit for a previous payment of $100. Therefore, she owes $2,367.50. The parties shall pay these sums from the proceeds from the sale of the Cape Cod time share. If the sale does not produce sufficient proceeds to pays these sums in full, or if the sale does not take place within 60 days, the parties shall make monthly payments to Attorney Diamond in the amount of $100 each.
14. Mr. Langley shall transfer to Ms. Langley one-half of his annuity and pension. This transfer shall be effectuated by assignment and/or Qualified Domestic Relations Orders as required. Both parties are ordered to sign any documents necessary to effectuate this transfer. The court shall retain jurisdiction to carry out the provisions of this paragraph.
15. The parties shall pay their own attorney's fees. CT Page 6877
BY THE COURT,
JOHN W. PICKARD JUDGE OF THE SUPERIOR COURT