[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CONSENSUAL TERMINATION
These matters were originally presented to this court for a contested termination of parental rights trial on this date. Prior to the commencement of evidence, the father Robert H. filed written consents of termination of parental rights (TPR) as to Ashley H., born December of 1990, and Amber H., born July of 1997. Also prior to the commencement of evidence, the mother Caroline C. filed a written consent of termination of parental rights as to Ashley. This court canvassed both parties as to the consents and found that both parents voluntarily and knowingly consented to the termination of parental rights as to Ashley, and that the father, Robert H., voluntarily and knowingly consented to the termination of parental rights as to Amber.
The court then received evidence as to the terminations, specifically the testimony of one Mary Margaret Wheeler., a licensed social worker and Ashley's therapist. An amended social study for termination of parental rights, prepared by the Department of Children and Families for both children and dated September 16, 2002, was also admitted into evidence as a full exhibit.
Subsequently, on the same date, Caroline C. filed a written consent of termination of parental rights as to Amber. The court canvassed her as to her consent and found that she Voluntarily and knowingly consented to the termination of parental rights as to Amber. During the canvass, the court was advised by both counsel for Caroline and counsel for the children that Caroline had entered into an agreement with the prospective adoptive parents, but that agreement was a "common law" agreement, was not governed by CGS Sec. 17a-112 and would not be filed with the clerk of court. The court then advised the parties and Caroline C. that the agreement was not part of the TPR and that she waived all rights to any recourse concerning the TPR should there be any problem with the agreement with the prospective adoptive parents. CT Page 14225
The State, through its Assistant Attorney General, indicated that its position was that TPR and adoption was in the best interests of both Ashley and Amber. Counsel for the children indicated that it was in Amber's best interests for the parents' parental rights to be terminated and for Amber to be adopted. She indicated that Amber was doing well in her foster home and that it was planned that the foster parents.would adopt Amber. However she felt that Ashley's parents' parental rights should not be terminated and that Ashley should go into long term foster care (LTFC). The attorney indicated that it was Ashley's desire to be reunited with her mother.
CGS Sec. 17a-112 (k) exempts a consensual termination from the necessity of the seven written findings. However, even with a consent, the court must conduct a hearing to determine by clear and convincing evidence that termination is in the best interests of the children.
The amended social study indicates that Robert H. and Caroline C. have failed to rehabilitate themselves. They have failed to:
1. Keep all appointments set by or with DCF
2. Participate in individual counseling
3. Participate in parenting classes
4. Participate in intensive inpatient substance abuse treatment
5. Refrain from substance abuse.
Additionally, Caroline C. has failed to secure and maintain adequate housing, while Robert H. has failed to:
1. Keep his whereabouts known to DCF
2. Participate in anger management classes.
The study details the various futile attempts by DCF to get each parent to rehabilitate themselves, especially in terms of substance abuse treatment.
The amended social study also indicates that Robert H. and Caroline C. have, by acts of commission or omission, denied their children the care, guidance or control necessary for the children's physical, educational, moral or emotional well-being. These conclusions are based upon: CT Page 14226
1. Both parents' extensive history of substance abuse
2. Both parents' failure to address their substance abuse problems, domestic violence, housing stability, follow through on recommendations, and inconsistency with treatment and counseling
3. Robert H.'s history of domestic violence in the presence of the children.
4. Caroline C.'s history of leaving the children with inappropriate caretakers
The parents show no signs of rehabilitating themselves in the future. In their present state, their habits and vices have rendered them incapable of properly raising these children and incapable of providing for the children's physical, educational, moral or emotional well-being. They have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, that they could assume a responsible position in the life of the children. The children cannot wait for these parents to do so. Additionally, their acts of commission or omission have denied their children the care, guidance or control necessary for the children's physical, educational, moral or emotional well-being.
Both parents have not made realistic and sustained efforts to conform their conduct to even minimally acceptable parental standards. Giving them additional time would not likely bring their performance as a parent within acceptable standards sufficient to make it in the best interest of the child to be reunited. DCF has offered these parents numerous opportunities to rehabilitate themselves, yet the parents have scorned them all.
Long term foster care is not in the children's best interests, in view of their need for permanency. They require stability of placement and continuity of care. Obviously, this is unobtainable while they are in their parents' care and dominion.
As previously indicated, counsel for the children indicated that it was in Amber's best interests for the parents' parental rights to be terminated and for Amber to be adopted. She indicated that Amber was dying well in her foster home and that it was planned that the foster parents would adopt Amber. However she felt that Ashley's parents' parental rights should not be terminated and that Ashley should go into LTFC. The attorney indicated that it was Ashley's desire to be reunited with her mother. CT Page 14227
The State called Ashley's therapist as a witness. She indicated that she believed that the TPR and adoption was in Ashley's long term best interests. The therapist testified that Ashley desperately needed stability, structure and consistency.
In Azia v. Dilascia, 64 Conn. App. 540 (2001), the Appellate Court discussed the issue of child preference:
 "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) Costa v. Costa, 57 Conn. App. 165, 168, 752 A.2d 1106 (2000).
 Our Supreme Court has stated: "In making a determination of custody . . . the trial court is bound to consider the child's present best interests and not what would have been in her best interests at some previous time. . . . [T]he court must . . . take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being." (Citation omitted; internal quotation marks omitted.) Blake v. Blake, 207 Conn. 217, 224-25, 541 A.2d 1201 (1988).
"[W]hether the child's preferences and feelings as to custody and visitation are a significant factor in the court's ultimate determination of the best interest of the child will necessarily depend on all the facts of the particular case, including the child's age and ability intelligently to form and express those preferences and feelings." Gennarini v. Gennarini, 2 Conn. App. 132, 137, 477 A.2d 674
(1984); see also General Statutes 46b-56 (b).fn8 "Section 46b-56 (b) does not require that the trial court award custody to whomever the child wishes; it requires only that the court take the child's wishes into consideration. . . . The ultimate concern of the trial court is to decide what is in the best interests of the child. . . . Although the child's wish is one factor for the court to consider in making that decision, it is certainly not the only one." (Citations omitted.) Knock v. knock, 224 Conn. 776, 788-89, 621 A.2d 267 (1993). "[E]ven when [a child's preference] is elicited, the information may be of questionable accuracy. A child caught up in the maelstrom of family strife may CT Page 14228 produce, to the psychologically untrained eye and ear, distorted and thus misleading images not only of the child's parents but of the child's own feelings; and those feelings themselves may be transient." Gennarini v. Gennarini, supra, 137.
The court does not doubt that Ashley earnestly wants to return to the custody of her mother. However, the best interest of the child is the paramount concern; child preference is but a factor in the decision. In this case, the State has shown by clear and convincing evidence that Ashley's best interests lie in removing her parents from her life and providing her with the stability, structure and consistency that she desperately needs in her young life.
Based upon the evidence produced at the hearing, it is clear that termination is in the best interests of both children. The court finds that the State has proved this by clear and convincing evidence.
Therefore, the court finds that based upon the credible evidence and testimony presented, that it would be in the best interest of the children to terminate parental rights at this time. This finding is made after considering the children's sense of time, his/her need for a secure and permanent environment, the relationship that the children has with the foster families and the totality of circumstances.
It is accordingly ORDERED that the parental rights of Robert H. and Caroline C. are hereby terminated as to their children Ashley H. and Amber H. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted in accordance with the law.
JUDGEMENT MAY ENTER ACCORDINGLY.
___________________ Taylor, J. CT Page 14229