IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-532

Filed: 21 July 2020

Lee County, No. 15 CVD 276

MICHAEL B. DALY, Plaintiff

v.

CHRISTY KELLY, Defendant

Appeal by plaintiff from orders entered 7 March 2018, 28 January 2019, 10 June 2019 by Judge Mary H. Wells in District Court, Lee County. Heard in the Court of Appeals 13 November 2019.

> *Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellant.*
>
> *Post, Foushee & Patton, P.A., by Kristy G. Patton, for defendant-appellee.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Timothy P. Lehan and Robert E. Desmond, for non-party Katie Thomas, LCSW.*

STROUD, Judge.

Plaintiff-father appeals trial court orders modifying permanent child custody, granting motions to quash, denying motions for contempt by both parties, and denying his offer of proof regarding the minor child's testimony. Where the trial court quashed Father's subpoena to the child for testimony, the trial court was required to allow Father to make an offer of proof of the child's testimony under North Carolina Rule of Civil Procedure 43 as this evidence does not clearly appear to be inadmissible

or privileged. In addition, the trial court erred by having the child's therapist's records produced to the trial court for *in camera* review *only* without even allowing counsel to review the records. Although the trial court did not err by sealing the therapy records of a child so they are not available in the public court file, the trial court did not present any legal justification for preventing the *parties* from having at least some form of access to the records. In a high conflict custody case such as this one, the testimony of the child and the therapist's notes are obviously pertinent.

Because all of the trial court's findings of fact and conclusions of law regarding modification of custody were based upon the evidence presented without the benefit of an offer of proof or evidence from Father regarding the child's desires and without access by the parties or counsel to the therapist's records, we are unable to review the substantive arguments regarding the custody order. The trial court erred in (1) denying Father the right to make an offer of proof and in (2) sealing records upon which the trial court relied in granting Mother's motion to modify custody, so we must reverse and remand the 10 June 2019 order as to modification of custody for a new hearing.[1]

## I. Background

---

[1] The order on appeal also denied the parties' motions for contempt. Father has not addressed the denial of his motions for contempt on appeal, and Mother did not cross-appeal to challenge the denial of her motions for contempt. Thus, this opinion addresses only the trial court's rulings as to motions to quash and modification of custody.

In 2001, the parties were married and had one child, Amy.[2]  In 2013, the parties separated, and in 2015, the parties divorced.  On 6 January 2016, the trial court entered a child custody order granting joint legal custody to the parties, with Mother having primary physical custody and Father having visitation.  On 14 June 2017, Mother filed a verified "DEFENDANT'S SECOND MOTION TO SHOW CAUSE FOR CONTEMPT AND MOTION TO MODIFY CHILD CUSTODY[.]"[3] Mother alleged that Father was not complying with the custody order and further that he was bullying Mother, making threats regarding the timing of his visitation, harassing Mother, disparaging Mother in front of the child, and telling the child to put the Mother on the phone though under the custody order communication should be through email.  Mother further contended that Father's actions were causing substantial emotional distress and chaos for the child.  After this motion for contempt, both parties filed additional motions for contempt.

On or about 21 December 2017, Father filed and served a notice of deposition and subpoena duces tecum for Ms. Katie Thomas, LCSW, Amy's therapist.  Pursuant to the subpoena, Father requested Ms. Thomas to produce "[a]ny and all notes or other documents from any counseling sessions with" Amy and "[a]ny and all communications you have had with" Mother.  The deposition was scheduled for 25

---

[2] We have used a pseudonym to protect the child's privacy.

[3] Our supplement to the record filed pursuant to North Carolina Rule of Appellate Procedure 9(d)(2) contains an 11 May 2016 motion for contempt, presumably Mother's first motion.

January 2018. On 4 January 2018, Father's counsel received a letter from Mr. Timothy Lehan, counsel for Ms. Thomas, stating that the subpoena was not "HIPPA" compliant. Father's counsel responded on 8 January, correctly noting that under the existing custody order, Father was entitled to full access to Amy's records and that Mother had not raised any objections to the notice of deposition or subpoena.

On 16 January 2018, Mother filed an objection to notice of deposition and subpoena and motion for protective order. The introduction to the motion states it is based upon North Carolina Rules of Civil Procedure 26, 30 and 45, although the substance of the motion does not mention what relevance any of these rules have to the relief requested. According to Mother's motion, four days prior, on 12 January 2018, Mother was faxed Father's motion to compel compliance with subpoena and notice of hearing for 24 January 2018.[4]

Mother's motion alleged Father's counsel had not consulted with her counsel about scheduling the deposition and it is "standard and customary practice" to have mental health records of this sort produced under seal. Mother further alleged Father's attempt to subpoena the records would interfere with the therapeutic relationship between the child and Ms. Thomas. However, Ms. Thomas did not file a

---

[4] The motion to compel was not file stamped until 22 January 2020.

motion to quash or any objection to the subpoena other than the letter from her counsel.[5]

On 24 January 2018, the trial court held a hearing on Father's Motion to compel and Mother's objection to the subpoena and motion for protective order. Counsel for Ms. Thomas also appeared at the hearing. On 7 March 2018, the trial court entered an order denying Father's motion to compel without prejudice and granting Mother's motion for protective order. The trial court ordered Ms. Thomas to produce the records as subpoenaed by Father under seal to the trial court within 14 days of the order for *in camera* review and no deposition of Ms. Thomas could be taken until after the trial court reviewed the records and entered an additional order regarding the scope of discovery allowed. Ms. Thomas produced the records to the trial court on 15 March 2018. The trial court kept the child's records under seal and did not allow either party or counsel to review them.

---

[5] "Written objection to subpoenas.--Subject to subsection (d) of this rule, *a person commanded to appear at a deposition* or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:
a.       The subpoena fails to allow reasonable time for compliance.
b.       The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
c.       The subpoena subjects a person to an undue burden or expense.
d.       The subpoena is otherwise unreasonable or oppressive.
e.       The subpoena is procedurally defective."
N.C. Gen. Stat. § 1A-1, Rule 45(c)(3) (2017) (emphasis added).

On 5 September 2018, the trial court again held a hearing on Father's motion to compel, as anticipated by the 7 March 2018 order. On 20 September 2018, the trial court entered an order allowing Father to depose Ms. Thomas by written questions only, limited to a list of questions as noted in the order. Ms. Thomas was required to respond to the written questions by 5:00 pm on 19 September 2018.[6] Ms. Thomas responses were filed on 20 September 2018.

On 20 September 2018, the trial court entered a pretrial order addressing the upcoming hearing which would address seven pending motions filed by the parties, including Mother's motion to modify custody and both parties' total of six motions for contempt. The hearing on these motions started on 20 September 2018 and continued into the next day but was not completed. The hearing resumed on 26 October 2018.

On or about 15 October 2018, Mother filed a second notice of objection, motion to quash, and motion for attorney fees regarding Father's subpoena to Amy. According to Mother's second notice of objection, motion to quash, and motion for attorney fees, on 1 October 2018 Father had issued a subpoena for Amy to testify at the 26 October 2018 hearing. As noted, the hearing on custody modification and contempt resumed on 26 October 2018.

At the beginning of the hearing, the trial court heard the motions to quash the subpoena for Amy. During the third and final day of hearing in October, the focus

---

[6] Ms. Thomas's responses to the written questions were due one day before the order was actually entered.

regarding subpoenas and motions to quash was primarily on Amy and not Ms. Thomas. Father argued that Amy had a right to be heard by the trial court when the court was determining custody. Father also noted he had requested a deposition from Ms. Thomas specifically to eliminate the need for the child to testify, but since the trial court had not allowed Father to depose Ms. Thomas and limited discovery to a written deposition with limited questions, his only way to present this evidence was through testimony of Amy. Father argued,

> So I want to be crystal clear, though, about what we have -
> - and make it clear for the record about what we have continually asked of this Court.
>     First off, we asked for Ms. Thomas to sit for a deposition precisely for the reason that perhaps her testimony would alleviate the possibility of having [Amy] even being involved in this matter. Ms. Thomas objected and, more importantly, [Mother] joined in that objection. And the Court limited us to these written interrogatories.

Father's counsel then noted he was simply requesting Amy to talk to the trial court in chambers, without counsel or parties present, but as Mother would not agree to this procedure, he had issued the subpoena to Amy. Father's attorney noted since he had never talked to Amy, he did not know what she would say, but that "I know this: That you -- from the comments that you've made from the bench, both parties have exposed this child to stuff that they shouldn't have based upon Ms. Thomas' notes."[7]

---

[7] This Court has reviewed the records under seal, and Father's counsel was correct.

Mother's counsel argued that there was no need for Amy to testify because the trial court had "all of Katie Thomas' records; so you have everything that she would have talked about. You've already seen that." Mother's counsel argued,

> So when they say, "We tried to avoid even talking about bringing the child by getting these things from Ms. Thomas," Your Honor already has everything Ms. Thomas could have presented. I mean, her notes are her most secret thing, I would think, with a counselor.
> When they say that they want her to come in here and speak with you with no one present, that -- that goes right back to my concern because the recordings[8] have shown that, you know, Mr. Daly has told this child false things about court orders, you know, made statements about my client breaking court orders, about provisions that were not even in the order -- you know, that her parents can only do exchanges, that she could let her go stay overnight, you know, that she has control in this matter -- and that's not the case.

Thus, Mother argued that Ms. Thomas' records were directly relevant to the issues in dispute, both as to modification of custody and to her motions to hold Father in contempt, but since the *trial court* already had the information in the records – reviewed *in camera* and still under seal – there was no need for *Father* and his counsel to be able to review this relevant information or to present evidence from Ms. Thomas or Amy.

After Father testified further, his counsel again raised his request to have Amy testify, as the trial court had not yet made a final ruling on the motions to quash.

---

[8] Both parties had produced phone recordings as part of their evidence including conversations between Amy and Father.

Counsel and the trial court had an extensive colloquy. Father's counsel noted he could not say what the child would say, since he had never spoken to her, but he noted if the trial court determined she was of suitable age and discretion, the trial court was required to consider her wishes regarding the custodial schedule, even though the court would not be bound by her wishes. In addition, Amy could be able to address whether either parent was improperly influencing her or saying things to her in violation of the custody order, as alleged by the contempt motions. Father's counsel also argued if the trial court granted the motion to quash, he would make an offer of proof to preserve the issue for appeal. Father noted that an offer of proof is required under Rule 43 of the Rules of Civil Procedure:

> (c) Record of excluded evidence.--In an action tried before a jury, if an objection to a question propounded to a witness is sustained by the court, *the court on request of the examining attorney shall order a record made of the answer the witness would have given.* The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon. *In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any grounds or that the witness is privileged.*

N.C. Gen. Stat. § 1A-1, Rule 43(c) (2017) (emphasis added). Based upon *Rhew v. Felton*, 178 N.C. App. 475, 488, 631 S.E.2d 859, 868 (2006), Father argued allowing an offer of proof is not a discretionary decision, but the trial court is required to allow

the offer of proof to be made in some manner, even if the trial court does not hear the evidence personally:

> Rule 43(c) thus requires the trial court, upon request, to allow the insertion of excluded evidence in the record. In the present case, the trial court allowed plaintiff to introduce the excluded evidence into the record. Plaintiff cites no binding authority, and we find none, that requires a trial court to personally take an offer of proof. Therefore, the trial court's failure to personally consider plaintiff's offer of proof was not prejudicial.

*Id.* (citation and quotation marks omitted).

Mother's counsel did not argue an offer of proof regarding the evidence from Amy would be irrelevant or privileged. *See generally* N.C. Gen. Stat. § 1A-1, Rule 43(c). Instead, Mother's counsel argued requiring Amy to come to court or any other setting to give an offer of proof would cause the same trauma to her as testifying. Mother's counsel argued:

> [a]nd now what I hear is that "If we don't like your ruling, we are going to get the testimony of this child and are going to take it up," and that is -- to me, is outrageous because this is all supposed to be the best interests of this child.
> She is under the care of a therapist, a therapist that you were so concerned about -- you know, you kept those records to yourself. They tried to depose her, did the interrogatories, all in the hopes of not even involving this child.
> I mean, I don't know what else they could have gotten from her that you don't have as evidence before Your Honor, and now saying that they are just going to go to a transcript and -- if they don't like your ruling.
> I've just never seen anything like it.

Ultimately, the trial court allowed Mother's motions to quash the subpoenas and Amy did not testify. Furthermore, the trial court denied Father's request to make an offer of proof regarding Amy's testimony, either in court or by a procedure outside the courtroom.

Based upon the three hearing dates in September and October, on 28 January 2019, the trial court entered an interim memorandum of order for custody which granted Mother sole "care custody and control" of the child and suspended Father's visitation and telephone contact until he had a psychological evaluation. Father timely appealed the 28 January 2019 interim memorandum of order ("Interim Memo"). On 27 February 2019, Father appealed the Interim Memo and "any other immediate orders involving the merits and necessarily affecting said Order, including but not limited to the March 7, 2018 order concerning Katie Thomas." Ultimately, on 10 June 2019, the trial court entered an "ORDER MODIFYING PERMANENT CHILD CUSTODY ORDER, GRANTING MOTIONS TO QUASH[9], DENYING MOTIONS FOR CONTEMPT, AND DENYING OFFER OF PROOF" ("Permanent Order"). The Permanent Order denied all six contempt motions filed by Mother and Father against the other. The trial court modified custody, granting full legal and

---

[9] The order only has a decree regarding the motions to quash Amy's subpoenas. The decree does not address Ms. Thomas' records or testimony.

- 11 -

physical custody to Mother and denied Father any visitation or contact with Amy.

The Permanent Order also addressed the motions to quash:

46. After hearing all of the evidence in this matter, the Court grants the Defendant's Motion to Quash the Subpoena 2 issued for the appearance of the minor child that was filed on October 15, 2018.

47. Upon rendering the ruling on the motion to quash, the Plaintiff's counsel made an oral motion to make an Offer of Proof pertaining to the minor child's testimony.

48. The minor child's presence in court and testimony will likely cause her great emotional distress. The Plaintiff's counsel argued that the minor child had a right to testify in this matter; however, the minor child has not expressed any desire to participate in the custody proceedings and it is the Plaintiff, not the minor child, who wishes for the minor child to be involved.

49. Due to parental conflict, divorce and custody proceedings, the Order provided that the Defendant was to obtain any counseling recommended for the minor child to assist her in dealing with any issues she may have arising from the separation and divorce of the parties. The minor child began seeing her therapist, Katie Thomas, shortly after the Order was entered and is still under her care.

50. Pursuant to prior orders entered in this matter Ms. Thomas produced her records for the minor child to the Court under seal for the review of the Court only. Neither party, nor their counsel, were granted access to the records, due to the high conflict nature of this matter. The Plaintiff's counsel, pursuant to orders of this court, did serve Ms. Thomas with written interrogatories, which she responded to and

her responses were admitted into evidence without objection. Ms. Thomas' responses expressed concern for the minor child being involved in discussions relating to the nature of this proceeding.

51. The Plaintiff has been aware that the minor child has been under the care of Ms. Thomas since she began therapy and has not had any involvement with her therapy with the exception of contacting Ms. Thomas on one occasion to question her about things unrelated to the minor child's mental wellbeing as outlined in her response.

52. The Plaintiff, through his counsel, was unable to articulate a specific forecast of what the minor child's testimony would be.

53. The Plaintiff, through his counsel, represented that the purpose in offering the minor child's testimony was so that the Court may hear the minor child's wishes with respect to the current custodial schedule whether she desired any changes, whether either party is trying to unduly influence the minor and/or unfairly share information regarding the court process with the minor child and whether the minor child can clarify factual disputes regarding the parties' statements and/or the minor child's responses to the parties' statements.

54. Plaintiff's attorney represented that he had no idea what the minor child might say.

55. Plaintiff's attorney could not inform the Court of the nature or content of the evidence being offered.

56. Plaintiff's attorney did not describe the purpose of the evidence beyond what the minor child's perspective might be.

57.   Plaintiff's attorney did not explain what consequential facts the evidence is expected to prove.

58.   Plaintiff's attorney offered no forecast that the minor child's testimony would provide the Court an exclusive or better basis on which to make a ruling.

59.   Plaintiff's attorney did not articulate or forecast how the minor child's testimony would provide the court with more information regarding the evidence on which to make a more complete or even a merely adequate basis for a ruling.

60.   Plaintiff's request to bring the minor child in to testify in order to make an offer of proof as to what the minor child would have said if called to testify is denied.

The trial court's decree had 14 provisions: Mother's first motion to quash Amy's subpoena was granted; Mother's second motion to quash Amy's subpoena was granted; Father's oral motion to make an offer of proof regarding Amy's testimony was denied; Mother's motion to modify custody was granted; Mother was given sole legal and physical custody of Amy; Father's visitation and telephone contact was suspended, including any contact through a third party on his behalf; Father was ordered not to contact any third party, such as teachers and counselors, in an attempt to gain information about Mother and Amy, although he was allowed access to Amy's "educational and medical records for informational purposes only[;]" Mother was ordered to notify Father of any emergencies regarding Amy via email; Father was to "submit to and obtain a complete psychological evaluation" provided "by a licensed

psychiatrist and/or psychologist" both parties agreed upon, and to "complete any and all recommended education and treatment[;]" Father was not to file a motion to establish visitation until "completion of the full psychological evaluation and any and all recommended education and treatment[;]" Amy should continue to see Ms. Thomas, and neither parent would "have access to Ms. Thomas' therapy session notes and/or confidential records, Ms. Thomas" was entitled to give the parties general information that did not interfere with her relationship with Amy, and Father was only to contact Ms. Thomas via email for "reasonable" purposes; all contempt motions were denied; this Permanent Order supersedes all of the prior custody orders; and law enforcement officers shall assist to "carry out the terms of this Court order." Father timely appealed from this order and had previously appealed from the interim memorandum of order. Thus, Father appealed the Interim Memo and Permanent Order. As the Permanent Order superseded the Interim Memo, and as all of Father's issues are properly addressed by considering the Permanent Order, we address only that order.

## II.     Offer of Proof of Child's Testimony

While Father's brief raises four issues challenging the modification of custody, all issues arise from the trial court's denial of his request to present testimony and evidence from Ms. Thomas and Amy. As Father noted in his argument before the trial court, "there's a couple black holes in this case. One black hole is we don't know

what [Amy] would say. But the other black hole that the counsel don't know is what's in Katie Thomas' notes." This Court is confronted by the same black hole, although unlike Father, we do have the benefit of *in camera* review of Ms. Thomas' records. We turn first to Amy.

Father argues the trial court erred by denying not only his request to present any evidence from Amy by quashing the subpoena but also by denying his request to make an offer of proof, either in court or in another setting outside court. Because the trial court did not allow Father to make an offer of proof of any sort, we are unable to determine if the trial court abused its discretion in quashing the subpoena.[10] We will therefore address Father's second issues on appeal, the trial court's refusal to allow Father to make an offer of proof.

Father contends the trial court erred in not following the requirement of Rule 43(c) and allowing him to make an offer of proof. We review whether the trial court failed to follow the mandate of Rule 43 *de novo*. *See State v. Johnson*, 253 N.C. App. 337, 345, 801 S.E.2d 123, 128 (2017) ("Defendant alleges a violation of a statutory mandate, and alleged statutory errors are questions of law and as such, are reviewed *de novo*." (citation, quotation marks, and brackets omitted)).

---

[10] "The trial court's evidentiary decisions, including a decision granting a motion to quash a subpoena on grounds that it is unduly burdensome, also will not be disturbed absent a showing of abuse of discretion." *In re A.H.*, 250 N.C. App. 546, 553, 794 S.E.2d 866, 872 (2016).

On appeal, Mother stresses that Father failed to make an offer of proof as to Amy's testimony, so he cannot raise the exclusion of her testimony on appeal. In fact, Mother argues that the trial court gave Father

> multiple opportunities to make his offer, by making the substance of [Amy]'s testimony apparent from the record through the testimony of his own witness or on cross-examination of the opposing party, or making an informal offer as described by the Court in <u>Martin</u> – however, he failed to do so. In his failure, he forfeited the right of the Plaintiff to assign error to the court's decision on appeal.

In *State v. Martin*, this Court noted that an offer of proof may be formal, by presenting the actual proposed testimony of the witness, or informal, by making a specific forecast of what the testimony would be from the witness. *See State v. Martin*, 241 N.C. App. 602, 605, 774 S.E.2d 330, 333 (2015) ("In the present case, Defendant's counsel made an informal offer of proof; that is, he represented to the court the content of the testimonies his witnesses would provide. In contrast, a formal offer of proof is made when counsel calls the witnesses to provide their proposed testimonies at the hearing. . . . Our Supreme Court has never held that a formal offer of proof is the only sufficient means to make an offer of proof: We wish to make it clear that there may be instances where a witness need not be called and questioned in order to preserve appellate review of excluded evidence. . . . Our Court has recently held that an informal offer of proof may be sufficient in certain situations to establish the essential content or substance of the excluded testimony." (citations and quotation

marks omitted)).[11] Thus, Mother contends that Father, by failing to make even an "informal" offer of proof regarding the substance of Amy's testimony, should not be allowed to raise this issue on appeal. But the Permanent Order belies Mother's argument as Father was denied the opportunity to make any type of offer of proof.

Both the caption of the order -- "ORDER MODIFYING PERMANENT CHILD CUSTODY ORDER, GRANTING MOTIONS TO QUASH, DENYING MOTIONS FOR CONTEMPT, AND *DENYING OFFER OF PROOF*" -- and the decree of the order -- "The Plaintiff's Oral Motion to make an Offer of Proof pertaining to the minor child's testimony is denied" -- specifically deny Father's request to make an offer of proof in any form. (Emphasis added.)

Mother further cites to Rule 601(b) of the Rules of Evidence, apparently implying that Amy may not have been competent to testify. *See* N.C. Gen. Stat. § 8C-1, Rule 601(b) (2017) ("A person is disqualified to testify as a witness when the court determines that the person is (1) incapable of expressing himself or herself concerning

---

[11] In *Martin*, this Court also noted that if the significance of the evidence is obvious from the record, a specific offer of proof may not be necessary: "Our Supreme Court has held that to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *Id*. at 605, 774 S.E.2d at 332-33 (citation and quotation marks omitted). Of course, while the relevancy of Amy's testimony is obvious as the child at issue in the custody matter, the significance is not, as Father's counsel himself noted, having never spoken with Amy it was not clear what if anything she would have to say. Without the significance of the offer of proof being obvious, it "must be made to appear in the record" so that this Court may properly analyze whether the trial court abused its discretion in allowing Mother's motions to quash. *Id.*

the matter as to be understood, either directly or through interpretation by one who can understand him or her, or (2) incapable of understanding the duty of a witness to tell the truth."). But Mother did not argue incompetency before the trial court nor was it a basis the trial court found for denying the request for an offer of proof.[12] Furthermore, because no evidence was presented as to Amy's competency as a witness, the trial court -- by not allowing an offer of proof -- had no basis upon which to make such a determination. We fully appreciate that the high level of conflict between Mother and Father in this case has no doubt been traumatic to Amy, and Father's counsel, even in requesting to make his offer, addressed Father's concerns about Amy by noting his efforts to protect her: He attempted to avoid subpoenaing Amy by deposing Ms. Thomas; he would prefer Amy only testify without the parties or even counsel present; he was willing to have Amy questioned outside of the court. Ultimately, the trial court quashed the subpoena and refused to allow any sort of offer of proof based upon potential trauma to Amy. We agree Amy's wellbeing is an important concern, but it is a not a legal basis to disregard the mandate within Rule 43.

---

[12] Mother argued, "Your Honor has the right to say, 'You know, based on everything this child has been put through, I don't find that she's a competent witness.'" But being "put through a lot" is not a legal basis for incompetency as a witness nor did Mother present any evidence upon which the trial court could make a finding regarding Amy's competency as a witness. Further, our review of Ms. Thomas's records does not suggest any reason Amy may be incompetent as a witness as this is defined under Rule 601, although on remand, the trial court may certainly consider the issue if it is raised.

As we have determined there was no evidence presented nor legal basis noted for denying Father's request to make an offer of proof, we conclude the trial court erred as counsel at trial *must* be allowed to make an offer of proof under these facts. *See* N.C. Gen. Stat. § 1A-1, Rule 43(c). The court may deny an offer of proof only if it "clearly appears that the evidence is not admissible on any grounds or that the witness is privileged[:]"

> [i]n an action tried before a jury, if an objection to a question propounded to a witness is sustained by the court, the court on request of the examining attorney shall order a record made of the answer the witness would have given. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon. *In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any grounds or that the witness is privileged.*

*Id.* (emphasis added). "As used in statutes, the word 'shall' is generally imperative or mandatory." *Silver v. Halifax County Board of Commissioners*, 371 N.C. 855, 863, 821 S.E.2d 755, 761 (2018) (citation and quotation marks omitted). "Rule 43(c) thus requires the trial court, upon request, to allow the insertion of excluded evidence in the record." *Nix v. Allstate Ins. Co.*, 68 N.C. App. 280, 282, 314 S.E.2d 562, 564 (1984).[13] Here, the trial court was required to allow the offer of proof, unless "it

---

[13] *Nix* continues, "The trial judge, however, is not required to allow insertion of an answer in the record if it clearly appears that the proffered testimony is not admissible on any grounds. The trial judge,

clearly appear[ed] that the evidence [wa]s not admissible on any grounds or that the witness [wa]s privileged[,]" and neither inadmissibility nor privilege were grounds raised by the Mother in challenging Father's request to make an offer of proof or mentioned in the Permanent Order itself as a basis for denying Father's request. N.C. Gen. Stat. § 1A-1, Rule 43.

Under similar circumstances, in *State v. Brown*, 116 N.C. App. 445, 447, 448 S.E.2d 131, 132 (1992), our Court followed the procedure laid out by the Supreme Court when counsel has been denied this "fundamental" part of the trial process:

> It is fundamental that trial counsel be allowed to make a trial record sufficient for appellate review. In *State v. Chapman*, our Supreme Court stated:
>> We regard the trial judge's refusal to allow counsel to complete the record as a regrettable judicial mistake. A judge should be loath to deny an attorney his right to have the record show the answer a witness would have made when an objection to the question is sustained. In refusing such a request the judge incurs the risk (1) that the Appellate Division may not concur in his judgment that the answer would have been immaterial or was already sufficiently disclosed by the record, and (2) that he may leave with the bench and bar the impression that he acted arbitrarily.
> Counsel here was prevented from making a sufficient record because the trial court refused to allow the

---

though, should be loath to deny an attorney his right to have an excluded answer placed in the record because the Appellate Division may not concur in his judgment that the proffered testimony is clearly inadmissible." *Id.* (citations and quotation marks omitted). But here no grounds for inadmissibility were raised before the trial court.

> defendant to make an offer of proof regarding the testimony of Ms. Russell.
>
> Without having the substance of Ms. Russell's proposed testimony, we cannot determine whether the defendant was prejudiced by the trial court's refusal to allow Ms. Russell to testify. The record must be complete in order that the defendant have meaningful appellate review.

*Id.* (citation omitted).

On remand, if Amy is again subpoenaed to testify and this issue arises again and the trial court determines there is a legal basis to quash the subpoena, we note that the method for making an offer of proof is within the discretion of the trial court. The offer could be taken in a setting outside the courtroom but both to preserve the rights of Father and to provide a proper record for appellate review, the offer itself is required. Only with the offer of proof would an appellate court be able to address Father's first and fourth issues on appeal – whether the trial court abused its discretion in allowing Mother's motions to quash and whether "many" of the trial court's findings of fact are not supported by competent evidence "given the court's legal error in not hearing from" Amy. (Original in all caps.)

### III. Denial of Access to Therapy Records

We turn now to Father's third issue on appeal regarding Ms. Thomas' sealed records. This issue is related to the first, as Ms. Thomas's notes are the only documentation of Amy's potential testimony, but Father was not allowed to have any access to this information. The only issue Father raises as to Ms. Thomas on appeal

is that neither party was provided her therapy notes. Thus, this opinion is *not* to be construed as a substantive determination on any of the other issues regarding Ms. Thomas, such as the fact that Mother raised the motion quash on her behalf rather than Ms. Thomas raising it herself; the trial court's decision to allow Mother's motion to quash on Ms. Thomas' behalf; and or the limited questions the trial court allowed. The only issue we are addressing regarding Ms. Thomas is the one Father brings forth on appeal: "Did the trial court err in sealing records of the child's counselor when the court's order fails to show the court considered alternatives to a complete sealing of the records?" (Original in all caps.)

Both Mother and Ms. Thomas contend on appeal that Father failed to properly preserve the issue regarding Ms. Thomas' notes. Ms. Thomas admits that Father provided a notice of appeal to the 7 March 2018 "order concerning Katie Thomas" but then contends Father thereafter waived this issue by failing to argue it in his brief. Mother, in a one paragraph argument, also makes a similar waiver argument to Ms. Thomas and does not substantively address the issue of sealing the notes. But the only reason both Ms. Thomas and Mother addressed the issue of the sealed notes in their briefs is *because* Father *did* address it in his brief. Neither Ms. Thomas nor Mother have raised any *valid* issues with preservation, such as a failure to raise the issue with the trial court or a defective notice of appeal, and thus we turn to the substantive issue raised by Father.

Father contends "the trial court abused its discretion in not providing the notes of [Amy]'s counselor to counsel for the parties[.]" (Original in all caps.) The trial court's 7 March 2018 order is the first addressing the issues arising around the testimony and documents to be provided by Ms. Thomas; in that order, the trial court denied Father's motion to compel, allowed Mother's motion for a protective order, ordered Ms. Thomas "to provide a copy of [Amy]'s medical records under seal to the Court for its review, *in camera*, within (14) days from the entry of this order[,]" and instructed Father to not depose Ms. Thomas "until such time as the Court has reviewed the records and determined if the deposition shall occur at a future time and under what conditions[.]" The trial court also decreed that the order was issued "without prejudice, as to" Father.

At a hearing on 11 April 2018 to discuss Ms. Thomas' testimony and notes the trial court noted it had reviewed the records and was concerned because "this child trusts this therapist and I don't want that to be destroyed at all." The trial court explained it was leaning toward allowing a deposition but not for "any information that would harm" Amy's trust but rather for "her opinion as to where we are with the child needing to or not needing to spend more time with Dad." Father's attorney then explained he was simply trying to respond to allegations made in the motions for contempt and to modify custody regarding statements made by Amy and his only route for doing that was Amy, an option he was trying not to exercise; instead, he was

hoping to explore this information with Ms. Thomas to avoid involving Amy. After hearing from all three attorneys involved, the trial court determined it would not be releasing the records in any manner, not even by limiting access to counsel. The basis of the trial court's decision against releasing records was the therapeutic relationship and the potential harm that may come to Amy from releasing the records.[14] Thereafter, on 20 September 2018, the trial court determined Ms. Thomas would "submit to a written deposition" and then provided the questions to be answered; this order did not address sealing records. The trial court then entered its pretrial order which did not address Ms. Thomas and then it entered the Interim Memo and Permanent Order. As to Ms. Thomas, the Permanent Order stated,

49. Due to parental conflict, divorce and custody proceedings, the Order provided that the Defendant was to obtain any counseling recommended for the minor child to assist her in dealing with any issues she may have arising from the separation and divorce of the parties. The minor child began seeing therapist, Katie Thomas, shortly after the Order was entered and is still under her care.

50. Pursuant to prior orders entered in this matter Ms. Thomas produced her records for the minor child to the Court under seal for the review of the Court only. Neither party, nor their counsel, were granted access to the records, due to the high conflict nature of this matter. The Plaintiff's counsel, pursuant to orders of this court, did serve Ms. Thomas with written interrogatories, which she responded to and

---

[14] It is not clear on the record before us how allowing the parties' counsel some form of access to records could impair Amy's trust in her therapist, since this access could not harm Amy's trust *unless* she is made aware of it.

her responses were admitted into evidence without objection. Ms. Thomas' responses expressed concern for the minor child being involved in discussions relating to the nature of this proceeding.

51.    The Plaintiff has been aware that the minor child has been under the care of Ms. Thomas since she began therapy and has not had any involvement with her therapy with the exception of contacting Ms. Thomas on one occasion to question her about things unrelated to the minor child's mental wellbeing as outlined in her responses.

The trial court then decreed as to Ms. Thomas:

The minor child shall continue counseling with Katie Thomas. Neither party shall have access to Ms. Thomas' therapy session notes and/or confidential records. Ms. Thomas shall be entitled to provide the parties with general information regarding the minor child's counseling so long as contact with the parties does not interfere with her therapeutic relationship with the minor child. The Plaintiff shall only contact Ms. Thomas via email to inquire as to the progress of the minor child so long as said contact is reasonable and limited in duration and is not used to harass and/or interfere with the minor child's therapy.

"Under the common law the decision to grant or deny access is left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *France v. France*, 209 N.C. App. 406, 414, 705 S.E.2d 399, 406 (2011) (citation, quotation marks, and brackets omitted). In *Raper v. Berry*, the trial court spoke with a minor in chambers without counsel or parties present, and the exclusion of the parties and counsel was challenged on appeal:

Did the court commit error in conferring with Judith Ann Raper in the absence of parties and counsel during the pendency of the proceeding? Her affidavit was before the court and the findings show that great weight was attached to her views and feelings, and properly so. However, *in a court proceeding all parties are entitled to be present at all of its stages so that they may hear and refute if they can.* In the *Gibbons* case the court conferred with the child whose custody was at issue and with others in the absence of parties and counsel. This Court held [245 N.C. 24, 95 S.E.2d 88]: *"The court committed error in receiving testimony from witnesses without affording petitioner an opportunity to be present and know what evidence was offered."* It is true witnesses other than the child were examined in the *Gibbons* case, but the error was not in the number but in the fact that any witness was so examined. While we recognize that in many instances it may be helpful for the court to talk to the child whose welfare is so vitally affected by the decision, *yet the tradition of our courts is that their hearings shall be open.* The Constitution of North Carolina so provides. Article I, Section 35. *The public, and especially the parties are entitled to see and hear what goes on in the courts. That courts are open is one of the sources of their greatest strength.* There is no suggestion that the able and conscientious judge was improperly influenced by the private interview but *the petitioner's right to hear all that was offered in his case must not be denied him.*

246 N.C. 193, 194–95, 97 S.E.2d 782, 783–84 (1957) (emphasis added) (citations omitted); *contrast Cox v. Cox*, 133 N.C. App. 221, 227, 515 S.E.2d 61, 66 (1999) (concluding that a party was not prejudiced when precluded from an "in-chambers interview" because counsel was present to represent them: "The attorneys' presence adequately protects the parties' rights and interests").

- 27 -

Here, Father's "right to hear all that was offered in his case" was denied him as neither he nor his attorney was allowed to view Ms. Thomas' notes.[15] *See Raper*, 246 N.C. at 195, 97 S.E.2d at 784. We conclude the trial court abused its discretion in precluding counsel from any access to Ms. Thomas's notes. The trial court may limit the parties' access and may order that the parties not copy or disclose the contents of the records to others, but they must be allowed to review the records in some manner. In addition, the fact that the case is a "high conflict" case does not justify the complete denial of access by Father or his counsel to Ms. Thomas' notes. Instead, as Father's counsel repeatedly argued, he needed access to the notes in the hope of avoiding a need to call Amy as a witness, thus avoiding any potential trauma to Amy from having to come to court or answer questions in an offer of proof. We appreciate the trial court's desire to protect Amy, but Father must also be allowed to prepare and present his case and to defend himself.

We also note Father has not raised any objection to the trial court's sealing of the notes so they are not available to the *public* in the court file. Father never requested that the records not be sealed as to the public, and it is certainly within the trial court's discretion to protect the child's therapy medical records from public access, but that is not the issue presented in this case. On remand, Amy's therapy

---

[15] On appeal, Father only challenges the trial court's refusal to provide access to counsel and we do not address whether further access by the parties would be required under these facts or circumstances.

records remain sealed as to public access, but the trial court must allow some form of access to the parties or their counsel.

## IV.    Conclusion

Because the trial court did not allow Father to make an offer of proof of Amy's potential testimony in any form, we are unable to address the substantive arguments regarding the trial court's order regarding the motion to quash the subpoena to Amy. Because the trial court erred in denying Father the right to make an offer of proof regarding Amy's testimony and in denying Father any form of access to Ms. Thomas's records, and because the trial court specifically relied upon Ms. Thomas's records in making the findings of fact and entering the modification of custody order on appeal, we must reverse and remand the 10 June 2019 order as to modification of custody for further proceedings. Father did not address the portions of the order denying both his and Mother's motions for contempt on appeal, so we affirm the order to the extent of the denial of the motions for contempt. On remand, before proceeding to a new hearing regarding Mother's motion to modify custody, the trial court shall hold a hearing to address the parties' access to Ms. Thomas' notes and, if requested by either party, her testimony either in a deposition or at trial. If necessary on remand, the trial court shall also address Father's subpoena to Amy and if the subpoena is quashed, the trial court shall allow Father to make an offer of proof as required by Rule 43 of the Rules of Civil Procedure.

AFFIRMED in part; REVERSED and REMANDED in part.

Judges MURPHY and BROOK concur.